No. 23-1439
United States District Court No. CR 22-139-BLG-SPW

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA

Plaintiff-Appellee,

-vs-

JAREN MICHAEL STENNERSON,

Defendant-Appellant.

---

**OPENING BRIEF OF DEFENDANT-APPELLANT**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

HONORABLE SUSAN P. WATTERS
UNITED STATES DISTRICT COURT JUDGE


RACHEL JULAGAY
Federal Defender, District of Montana
**\*GILLIAN E. GOSCH**
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
175 N 27th Street, Suite 401
Billings, MT 59101
Telephone: (406) 259-2459
Counsel for Defendant-Appellant

SUBMITTED: September 21, 2023.

## **<u>TABLE OF CONTENTS</u>**

<u>Page No.</u>

TABLE OF CONTENTS ...........................................................ii-iv

TABLE OF AUTHORITIES......................................................v-viii

I.     STATEMENT OF JURISDICTION ...................................... 9

    A. Subject Matter Jurisdiction in the District Court ........................... 9

    B. Jurisdiction in the Court of Appeals ............................................. 10

    C. Appealability of District Court Order and Timeliness of the Appeal ................................................................................................... 10

    D. Bail Status of Defendant-Appellant ............................................ 10

II.    STATEMENT OF THE ISSUES ....................................... 10

    I.    THE DISTRICT COURT ERRED IN DETERMINING THAT *BRUEN* DID NOT RENDER 18 U.S.C. § 922(G)(3) AND 18 U.S.C. § 922(N) UNCONSTITUTIONAL UNDER THE SECOND AMENDMENT....................................................... 10

    II.    THE DISTRICT COURT ERRED IN DETERMINING THAT THE STATUTORY DEFINITION OF "UNLAWFUL USER" IN 18 U.S.C. § 922(G)(3) IS NOT UNCONSTITUTIONALLY VAGUE. .................................................................................. 10

III.    STATEMENT OF THE CASE ......................................... 11

IV.    STATEMENT OF THE PERTINENT FACTS................................. 11

V.    SUMMARY OF ARGUMENT ........................................ 12

VI.    ARGUMENT.......................................................... 14

    I.    THE DISTRICT COURT ERRED IN DETERMINING THAT *BRUEN* DID NOT RENDER 18 U.S.C. § 922(G)(3) AND 18 U.S.C.

ii

§ 922(N) UNCONSTITUTIONAL UNDER THE SECOND
AMENDMENT. .......................................................................... 14

A. Standard of Review and Reviewability ................................... 14

B. *Bruen* established a new analytical framework for analyzing
Second Amendment challenges. ............................................. 14

C. The Second Amendment's plain text covers conduct under both
§ 922(n) and § 922(g)(3) and thus, both are presumptively
unconstitutional. ...................................................................... 16

D. Stennerson qualifies as part of "the people" protected by the
Second Amendment. ................................................................ 18

E. The Government cannot meet its burden in showing that § 922(n)
and § 922(g)(3) are "consistent with the Nation's historical
tradition of firearm regulation." ............................................. 20

    1. *Bruen* requires that the Government provide founding-
era historical firearm regulations that are "distinctly" or
"relevantly similar" to § 922(n) and § 922(g)(3)...... 20

    2. The Government cannot point to any evidence of
founding-era firearm restrictions or historical
analogues "distinctly" or "relevantly similar" to §
922(n)........................................................................... 23

    3. The Government cannot point to any evidence of
founding-era firearm restrictions or historical
analogues "distinctly" or "relevantly similar" to §
922(g)(3). ................................................................... 27

II.   THE DISTRICT COURT ERRED IN DETERMINING THAT THE
STATUTORY DEFINITION OF "UNLAWFUL USER" IN 18
U.S.C. § 922(G)(3) IS NOT UNCONSTITUTIONALLY VAGUE .
.................................................................................................... 32

A. Standard of Review and Reviewability ................................... 32

      B.  Section 922(g)(3) is unconstitutionally vague on its face and as applied to Stennerson. ............................................................... 32

VII.   CONCLUSION ...................................................................... 38

VIII.  STATEMENT OF RELATED CASES ............................... 39

IX.    CERTIFICATE OF COMPLIANCE .................................. 40

X.     CERTIFICATE OF MAILING ........................................... 41

## <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

**Cases**

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .................................................................. 14-16, 18-21, 28-29

*Johnson v. United States*,
576 U.S. 591 (2015) ................................................................................ 33-34, 36

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) ............................................................... 14-15, 17, 19, 29, 33

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
42 S. Ct. 2111 (2022) ........................................................… 10, 11-25, 27-31, 35, 38

*NLRB v. Noel Canning*,
573 U.S. 513 (2014) ......................................................................................21

*Range v. United States*,
69 F.4th 96 (3rd Cir. 2023) ............................................................................25

*Sessions v. Dimaya*,
138 S. Ct. 1204 (2018) ............................................................................. 34, 37

*Silvester v. Harris*,
843 F.3d 816 (2016) ......................................................................................15

*United States v. Bramer*,
832 F.3d 908 (8th Cir. 2016) ..........................................................................38

*United States v. Butts*,
2022 WL 16553037 (D. Mont. Oct. 31, 2022) ................................................ 16, 19

*United States v. Caparotta*,
676 F.3d 213 (1st Cir. 2012) ............................................................... 35-36

*United States v. Carnes*,
22 F.4th 743 (8th Cir. 2022) ....................................................................35

*United States v. Chovan*,
735 F.3d 1127(9th Cir. 2013) ........................................................... 14-15

*United States v. Cook*,
970 F.3d 866 (7th Cir. 2020) ...................................................................38

*United States v. Cooper*,
173 f.3d 1192 (9th Cir. 1999) ..................................................................32

*United States v. Daniels*,
2023 WL 5091317 (August 9, 2023) ......................................... 24, 27, 30

*United States v. Davis*,
139 S. Ct. 2319 (2019) ........................................................................ 33-34

*United States v. Dugan*,
657 F.3d 998 (9th Cir. 2011)...………………………………………………....20

*United States v. Edwards*,
348 F.3d 950 (11th Cir. 2003) ................................................................35

*United States v. Hasson*,
26 F.4th 610 (4th Cir. 2022) ...................................................................38

*United States v. Hicks*,
2023 WL 164170 (Jan. 9, 2023) ..............................................................26

*United States v. Hudson*,
11 U.S. 32 (1812) .................................................................................33

*United States v. Laurenti*,
861 F. Supp. 2d 71 (E.D.N.Y. 2011) .......................................................17

*United States v. Love*,
2021 WL 5758940 (E.D. Mich. Dec. 3, 2021)..........................................19

*United States v. Morales-Lopez*,
2022 WL 2355920 (D. Utah, June 30, 2022 ................................. 34, 36-37

*United States v. Price*,
2022 WL 6968457 (S.D.W.V. Oct. 12, 2022) ..........................................16

*United States v. Purdy*,
264 F.3d 809 (9th Cir. 2001) ...................................................... 32, 35-36

*United States v. Rahimi*,
61 F.4th 443 (5th Cir. 2023) .............................................................. 21, 30

*United States v. Rodriguez*,
360 F.3d 949 (9th Cir. 2004) ...................................................................33

*United States v. Skoien*,
614 F.3d 638, 640 (7th Cir. 2010) ...........................................................29

*United States v. Vongxay*,
594 F.3d 1111 (9th Cir. 2010) ........................................................ 14, 20, 26

*United States v. Yancey*,
621 F.3d 681 (7th Cir. 2010) ...................................................................29

**United States Code**

18 U.S.C. § 922(g)(3)......................................................9-14, 16-17, 20-23, 27-38

18 U.S.C. § 922(n) ......................................................... 9-14, 16-17, 19-24, 27, 38

18 U.S.C. § 3231 .........................................................................................9

28 U.S.C. § 1291 .......................................................................................10

Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), 52 Stat. 1250 (repealed)23

Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213 ................................. 23, 28

**Statutes**

1899 S.C. Acts 97 ....................................................................................27

1907 Ariz. Sess. Laws 15 .........................................................................27

**United States Constitution**

U.S. CONST. amend. II............................................................ 14, 17-18, 30

U.S. CONST. amend. V ............................................................... 22, 32

**Federal Rules of Appellate Procedure**

Rule 4(b)(1)(A) ........................................................................................10

**Federal Rules of Criminal Procedure**

Rule 32 ...................................................................................................10

**Other**

Joseph G. S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249 (2020)...................... 25-26

ROBERT J. SPITZER, GUNS ACROSS AMERICA: RECONCILING GUN RULES AND RIGHTS (Ox. Univ. Press 2015).............................................................27

Ninth Circuit Court of Appeals No. 23-1439

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA.

Plaintiff-Appellee

vs.

JAREN MICHAEL STENNERSON,

Defendant-Appellant

## OPENING BRIEF OF DEFENDANT-APPELLANT

## I.     STATEMENT OF JURISDICTION

### A. Subject Matter Jurisdiction in the District Court

The United States District Court for the District of Montana had jurisdiction over the original criminal case because the Government brought an Indictment against Jaren Michael Stennerson ("Stennerson") charging him with being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3) and receipt of a firearm while under indictment, in violation of 18 U.S.C. § 922(n). (ER-80–82). Those allegations qualify as "offense[s] against the laws of the United States," giving the district court jurisdiction over the matter under 18 U.S.C. § 3231.

9

### B. Jurisdiction in the Court of Appeals

Stennerson appeals from the Court's Order Denying his Motion to Dismiss Indictment imposed by the district court. (ER-19–24). This court has jurisdiction under 28 U.S.C. § 1291 and Rule 32 of the Federal Rules of Criminal Procedure.

### C. Appealability of District Court Order and Timeliness of the Appeal

Pursuant to a plea agreement with the United States, Stennerson entered a conditional plea in this matter on March 3, 2023. (ER-10–18). The final judgment in this case was filed and entered in the District Court on July 12, 2023. (ER-3–9). A notice of appeal was filed on July 12, 2023. (ER-83–84). This appeal is timely under Rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure.

### D. Bail Status of Defendant-Appellant

Stennerson is incarcerated at Terre Haute U.S.P. in Terre Haute, Indiana. His projected release date is scheduled for May 23, 2024.

## II. STATEMENT OF THE ISSUES

**I. THE DISTRICT COURT ERRED IN DETERMINING THAT *BRUEN* DID NOT RENDER 18 U.S.C. § 922(G)(3) AND 18 U.S.C. § 922(N) UNCONSTITUTIONAL UNDER THE SECOND AMENDMENT.**

**II. THE DISTRICT COURT ERRED IN DETERMINING THAT THE STATUTORY DEFINITION OF "UNLAWFUL USER" IN 18 U.S.C. § 922(G)(3) IS NOT UNCONSTITUTIONALLY VAGUE.**

### III.   STATEMENT OF THE CASE

Appellant Jaren Michael Stennerson ("Stennerson") appeals from the denial of his Motion to Dismiss Indictment which was denied on February 24, 2023. (ER-19– 24). With this appeal from the District Court order denying his motion to dismiss, Stennerson argues that 922(g)(3) and 922(n) are unconstitutional in the wake of the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct 2111 (2022).

### IV.   STATEMENT OF THE PERTINENT FACTS

On February 11, 2019, Jaren Michael Stennerson was charged in Montana state court with Burglary, a felony.  On August 30, 2019, Stennerson was charged in Montana state court with Criminal Possession of Dangerous Drugs, a felony.  In August of 2020, Stennerson was charged in Montana state court with two counts of Felony Criminal Possession of Dangerous Drugs.  As part of Stennerson's release conditions, issued on August 27, 2019, he may not possess a firearm, destructive device, or other dangerous weapon.

On March 30, 2022, while the felony state charges were pending, Stennerson was detained, and officers conducted a Terry search of his person.  Officers seized a firearm, a CZ 9mm, from Stennerson's person and arrested Stennerson for possession of stolen property upon discovering that the firearm was reported stolen on March 30, 2021.  Officers also seized a metal object that potentially obtained

11

explosive material located in Stennerson's backpack. Stennerson was later charged in Montana state court with Possession of Destructive Devices.

On November 18, 2022, Stennerson was federally charged with and indicted on two counts: Count 1: Violation of 18 U.S.C. 922(g)(3)—Unlawful Drug User in Possession of a Firearm and Count 2: Violation of 18 U.S.C. § 922(n)—Illegal Receipt of a Firearm by a Person under Indictment. (ER-80–82). Stennerson filed his Motion to Dismiss Indictment on December 28, 2022. (ER-61–79). The Court denied the Motion to Dismiss Indictment on February 24, 2023. (ER-19–24). Stennerson entered into a conditional plea pleading guilty to both Count I and Count II on March 3, 2023. (ER-10–18). Stennerson was sentenced on July 12, 2023, and received a sentence of 21 months incarceration to run concurrent on each count and to be followed by 3 years supervised release. (ER-4–5).

Stennerson filed a timely notice of appeal and now files his opening brief challenging the constitutionality of 18 U.S.C. § 922(g)(3) and 18 U.S.C. § 922(n).

## V.    SUMMARY OF ARGUMENT

Stennerson challenges the constitutionality of 18 U.S.C. § 922(n) and 18 U.S.C. § 922(g)(3) as violating his Second Amendment rights. 18 U.S.C. § 922(n) and 18 U.S.C. § 922(g)(3) are facially unconstitutional after the Supreme Court's decisions in *New York State Rifle & Pistol Association, Inc. v. Bruen*.

12

The District Court erred by entering judgment against Stennerson for violating § 922(n) and § 922(g)(3) because the conduct underlying his conviction falls squarely within the scope of the Second Amendment's plain text. (ER-19–24). The Government did not carry its burden under *Bruen* to demonstrate that the restriction on constitutionally protected conduct fits within the historical tradition of firearm regulation. (ER-25–56). Further, there are no "historical analogues" showing the disarmament of all individuals under indictment nor the disarmament of all unlawful users of a controlled substance.

Additionally, 18 U.S.C. § 922(g)(3) violates the due process clause of the Fifth Amendment. The application of a firearms prohibition to "unlawful user[s] of . . . any controlled substance . . ." fails to provide fair notice of what is prohibited and encourages discriminatory enforcement. 18 U.S.C. § 922(g)(3). Section 922(g)(3) is unconstitutionally vague as the phrase "unlawful user" has no clear meaning. The term implies some sort of drug use but offers no standard for determining whether a particular person's use will qualify, and the words utilized by courts fail to clarify the term. Because the statute fails to clearly define its prohibition and provide reasonable notice, § 922(g)(3) is void for vagueness on its face and as applied to Stennerson.

## VI.   ARGUMENT

### I.   THE DISTRICT COURT ERRED IN DETERMINING THAT *BRUEN* DID NOT RENDER 18 U.S.C. § 922(G)(3) AND 18 U.S.C. § 922(N) UNCONSTITUTIONAL UNDER THE SECOND AMENDMENT.

#### A. Standard of Review and Reviewability

The Court of Appeals "reviews de novo the constitutionality of a statute." *United States v. Chovan*, 735 F.3d 1127, 1132 (9th Cir. 2013) (citing *United States v. Vongxay*, 594 F.3d 1111, 1114 (9th Cir. 2010)).  The Court of Appeals also "reviews de novo constitutional challenges to a district court's denial of a motion to dismiss." *Id.*

#### B. *Bruen* established a new analytical framework for analyzing Second Amendment challenges.

The Second Amendment to the United States Constitution provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment codified an individual right to possess and carry weapons, the core purpose of which is self-defense in the home.  554 U.S. 570, 628 (2008); *see also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (holding that *Heller* recognized individual self-defense as a "*central component*" of the Second Amendment).

14

Following *Heller*, this Court adopted a two-step inquiry for analyzing laws that might impact the Second Amendment. *United States v. Chovan*, 735 F.3d 1127, 1136 (2013). At the first step, courts asked "whether the challenged law burdens conduct protected by the Second Amendment. *Id.* This determination was based on a "historical understanding of the scope of the right." *Silvester v. Harris*, 843 F.3d 816, 821 (2016) (quoting *Heller*, 554 U.S. at 625). If the conduct fell outside the scope of the Second Amendment, then the law was constitutional. *Id.* Otherwise, courts proceeded to the second step to determine whether to apply strict or intermediate scrutiny. *Chovan*, 735 F.3d at 1136.

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court clarified the analytical framework courts should employ in scrutinizing firearm regulations. 142 S. Ct. 2111, 2127 (2022). The Supreme Court rejected the second step of the two-step inquiry adopted by this Court and several other Courts of Appeals because "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Bruen*, 142 S. Ct. at 2127. The Court reasoned that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.*

Under the new framework, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that

15

conduct." *Id.* at 2126. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment." *Id.* In other words, "[b]ecause the Second Amendment was adopted in 1791, only those regulations that would have been considered constitutional then can be constitutional now." *United States v. Butts*, 2022 WL 16553037, at *2 (D. Mont. Oct. 31, 2022) (quoting *United States v. Price*, 2022 WL 6968457, at *1 (S.D.W.V. Oct. 12, 2022)). To justify its regulation, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. If the government is unable to make this showing, then the regulation is unconstitutional. *Id.*

### C. The Second Amendment's plain text covers conduct under both § 922(n) and § 922(g)(3) and thus, both are presumptively unconstitutional.

Under *Bruen*'s new framework, a court must first determine whether the Second Amendment's text covers an individual's conduct. *Bruen*, 142 S. Ct. at 2129-30. The Second Amendment text "guarantee[s] the individual right to possess and carry weapons in case of confrontation" and does not depend upon service in the militia. *Id.* at 2127 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)).

16

The conduct prohibited by § 922(n)–receipt of a firearm–is covered by "the right of the people to keep and bear arms." U.S. CONST. amend. II; *see also United States v. Quiroz*, 2022 WL 4352482, at *4 (W.D. Tex. Sept. 19, 2022) (finding that "to keep and bear arms" encompasses receipt of a firearm). Receipt itself impacts the core Second Amendment right to possess a firearm for self-defense. *See United States v. Laurenti*, 861 F. Supp. 2d 71, 85 (E.D.N.Y. 2011); *McDonald*, 561 U.S. at 767; *Bruen*, 142 S. Ct. 2111.

The conduct prohibited by § 922(g)(3)– Stennerson's conduct in possessing a firearm under § 922(g)(3) is protected under the Second Amendment's guarantee. *See Bruen*, 142 S. Ct. at 2130. While the District Court and the Government suggested that Stennerson's conduct is not protected under the Second Amendment because he is not a "law-abiding, responsible citizen," the section below[1] discusses why Stennerson is considered part of the "people," who are entitled to Second Amendment protections.

Further, the sole question at this stage of the *Bruen* analysis is whether the "conduct" at issue is covered by the plain text of the Second Amendment. *Id.* at 2126. Because the conduct at issue under § 922(n) and § 922(g)(3) is covered by the Second Amendment's text, the statutes are presumptively unconstitutional. *Id.* at 2129-30. Thus, when the Second Amendment's plain text covers the conduct at

---

[1] *See infra* Part VI.D.

issue, the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

**D. Stennerson qualifies as part of "the people" under the Second Amendment.**

Stennerson qualifies as part of "the people" entitled to Second Amendment protections. The Second Amendment confers the right "to keep and bear arms" on "the people," and does not limit who is included in "the people." U.S. CONST. amend. II. In *Heller*, the Supreme Court clarified that like other provisions in the Constitution, the term "the people" refers to "all members of a political community, not an unspecified subset." *Heller*, 554 U.S. at 580. This meaning created a "strong presumption that the Second Amendment right is exercised individually and belongs to *all* Americans." *Id.* at 581 (emphasis added). These individual rights extend to "the people," or in other words, to a "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of the community." *Id.* at 580.

However, in denying Stennerson's motion to dismiss, the District Court faulted Stennerson as an "unvirtuous citizen" who was not entitled to Second Amendment protections. (ER-22–23). Utilizing the concept of the "unvirtuous citizen" to justify disarming groups of people operates on a level of generality rejected by *Bruen*. Placing individuals into "dangerous" and "unvirtuous"

categories is impermissibly malleable and using these labels takes courts back to the means-end balancing rejected in *Bruen*.

The Second Amendment's text does not give any indication that suggests drug users are not among "the people" entitled to the Amendment's protection. *Bruen*'s holding remained consistent with *Heller* and *McDonald* by repeatedly using the term "law-abiding citizen" to qualify who could exercise individual Second Amendment rights. *See United States v. Butts*, 2022 WL 16553037, at *2 (D. Mont. Oct. 31, 2022) (citing multiple examples of the use of the term "law-abiding citizen" throughout the *Bruen* opinion). However, *Bruen* never held that the right "to keep and bear arms" only belongs to law-abiding citizens. Instead, the *Bruen* Court held that it was undisputed that the petitioners, who were "two ordinary, law-abiding, adult citizens–are part of 'the people.'" *Bruen*, 142 S. Ct. at 2134. Holding otherwise would conflict with *Bruen*'s language that the "Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *Id.* at 2156.

Regarding § 922(n), courts have routinely found that individuals under indictment are "law-abiding citizens." *See, e.g.*, *United States v. Laurent*, 861 F. Supp. 71, 102 (E.D.N.Y. 2011) ("a defendant under indictment is a 'law-abiding citizen' who remains eligible for Second Amendment protection.'"); *United States v. Love*, 2021 WL 5758940, at *3 (E.D. Mich. Dec. 3, 2021) ("The purchase of a

19

firearm by a presumably innocent individual falls within the Second Amendment right as historically understood.").  Thus, Stennerson qualifies as a "law-abiding citizen" and *Heller*'s endorsement of felon-in-possession laws as constitutional has little bearing on the constitutionality of § 922(n).[2]

### E. The Government has not met its burden in showing that § 922(n) and § 922(g)(3) are "consistent with the Nation's historical tradition of firearm regulation."

Because the plain text of the Second Amendment covers the conduct at issue in § 922(n) and § 922(g)(3), the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2130.  The government cannot meet its burden.

### 1.  *Bruen* requires that the Government provide founding-era historical firearm regulations that are "distinctly" or "relevantly similar" to § 922(n) and § 922(g)(3).

In denying Stennerson's Motion to Dismiss Indictment under *Bruen*, the District Court relied primarily on pre-*Bruen* jurisprudence in reaching its conclusion.[3]  (ER-19–24).  While these pre-*Bruen* cases utilized a historical analysis to evaluate restrictions on the Second Amendment, these cases did so

---

[2] *See also United States v. Quiroz*, 2022 WL 4352482, at *10 (W.D. Tex. Sept. 19, 2022) (explaining that while the Nation does have a history of excluding specific groups, such as felons, from exercising certain rights reserved to "the people," there is little historical evidence supporting the exclusion of those under indictment).

[3] For example, the district court cited to this Court's decisions in *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2011), which held that 18 U.S.C. § 922(g)(1) is constitutional and *United States v. Dugan*, 657 F.3d 998, 999-1000 (9th Cir. 2011), which held that 18 U.S.C. § 922(g)(3) is constitutional.  While the district court held that both decisions were not "clearly irreconcilable" with the Supreme Court's decision in *Bruen*, the court failed to explain why that was the case.

20

without *Bruen*'s framework. Therefore, reliance on these pre-*Bruen* cases fails to adopt the Supreme Court's new analytical framework. *See, e.g.*, *United States v. Rahimi*, 61 F.4th 443, 450-51 (5th Cir. 2023) ("*Bruen* clearly 'fundamentally change[d]' our analysis of laws that implicate the Second Amendment, . . . rendering our prior precedent obsolete.").

Instead, to justify § 922(n) and § 922(g)(3)'s restrictions on firearm possession, the government must demonstrate that these modern regulations are consistent with the Nation's historical firearm regulation. *Bruen*, 142 S. Ct. at 2131. The government cannot "simply posit that the regulation promotes an important interest." *Id.* at 2126.

"[W]hen it comes to interpreting the Constitution, not all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.'" *Id.* at 2136 (quoting *Heller*, 554 U.S. at 634-35). The government cannot rely upon outlier historical restrictions. *Id.* at 2133, 2156. Instead, the government must show "governmental practice" that has been "open, widespread, and unchallenged since the early days of the Republic." *Id.* at 2137 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 572 (2014)).

The government's proffered historical evidence must be sufficiently comparable to the challenged regulation to satisfy Bruen's requirements. "[W]hether modern and historical regulations impose a comparable burden on the

21

right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id.* at 2133. When faced with "modern regulations that were unimaginable at the founding," these regulations may require a "more nuanced" approach looking at historical analogies "relatively similar" to modern regulation. *Id.* at 2132. Further, if a "challenged regulation addresses a general social problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131. Additionally, evidence that "earlier generations address the societal problem . . . through materially different means," is relevant evidence that a challenged regulation violates the Second Amendment. *Id.* The core question is whether the challenged law and the proffered analogue are distinctly or "relevantly similar." *Id.* at 2132.

For both § 922(n) and § 922(g)(3), the government must provide historical examples of regulations that are "distinctly similar" to both sections because the restrictions do not address "unprecedented social concerns or dramatic technological changes." *Bruen*, 142 S. Ct. at 2132-33. Section 922(n) creates a complete ban on firearm receipt, based upon indictment, which is a process older than and explicitly discussed in the Fifth Amendment. *See* U.S. Const. amend.

V.  Section 922(g)(3) addresses firearm violence committed by intoxicated individuals—a problem that existed in 1791.

### 2. The Government cannot point to any evidence of founding-era firearm restrictions or historical analogues "distinctly" or "relevantly similar" to § 922(n).

The Government cannot identify any laws "distinctly similar" to § 922(n) and § 922(g)(3).  Additionally, because § 922(n) and § 922(g)(3) address "general societal problem[s] that [have] persisted since the 18th century," the lack of distinctly similar laws is "relevant evidence" that § 922(n) and § 922(g)(3) violate the Second Amendment.  *See Bruen*, 142 S. Ct. at 2131.

The history of barring indicted individuals from receiving firearms is a limited and relatively recent phenomenon.  The colonial governments did not disarm indictees, and federal and state governments did not do so until 1938 with the passage of the Federal Firearms Act ("FFA").  *See* Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), 52 Stat. 1250 (repealed); *United States v. Quiroz*, 2022 WL 4352482, at *4 (W.D. Tex. Sept. 19, 2022) (discussing § 922(n)'s history beginning with the passage of the Federal Firearms Act).  Congress amended the FFA in 1961 to cover all individuals under felony indictment and expanded gun regulations under the Gun Control Act of 1968 ("GCA") to cover indictments at the state and federal levels.  Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213; *Quiroz*, 2022 WL 4352482, at *4-5.  The lack of a "distinctly similar

23

historical regulation" restricting firearm receipt for individuals under indictment, particularly prior to the twentieth century, demonstrates that § 922(n) is inconsistent with the Second Amendment.[4] *See Bruen*, 142 S. Ct. at 2131.

In arguing that § 922(n) is constitutional under *Bruen*, the Government pointed to a general principle of disarming select groups of individuals that the Government has deemed dangerous or as "unvirtuous citizens." In an attempt to manufacture this "Nation's historical tradition of firearm regulation," the Government improperly groups these restrictions together to justify § 922(n). *See Bruen*, 142 S. Ct. at 2126. (ER-28).

While the Government's cited historical examples typically dealt with public safety, "each disarmament also had its own unique political or social motivations." *See United States v. Daniels*, 2023 WL 5091317, at *11 (August 9, 2023). For example, laws disarming people the Framers deemed dangerous or untrustworthy, were disarmed not because "they were thought to lack self-control," but rather, were disarmed because they "were viewed as potential threats to the integrity of the state." *Id.* This principle equally applies to religious and racial minorities, who the government feared would stage a violent attack against the United States. *Id.* While these historical examples may show that the government was able to disarm

---

[4] The Government cannot rely upon the passage of 18 U.S.C. § 922 to establish a long-standing historical tradition of prohibiting firearm possession by individuals under indictment. *See Bruen*, 142 S. Ct. at 2136-37. The Supreme Court in *Bruen* specifically rejected considering any twentieth century evidence as it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.* at 2154 n.28.

24

groups of individuals who posed a danger to the public, extrapolating that principle to allow legislatures to label a class of people as "dangerous" and disarm them undermines the Second Amendment. Instead, the government must show analogues to "particular regulatory traditions instead of a general notion of 'dangerousness.'" *Id.* at *14.

Despite early versions of gun regulations that disarmed Native Americans, enslaved persons, and religious minorities,[5] the Founders never proposed disarming or preventing indictees from receiving guns. The Government's reliance upon these laws is misplaced as it does not explain how disarming minorities is analogous to disarming indictees. *See Range v. United States*, 69 F.4th 96, 104-05 (3rd Cir. 2023) (concluding that analogizing regulations disarming racial and religious minorities to indictees as too broad). Additionally, because disarming individuals based on race would be unconstitutional, using such statutes as analogues defeats the Government's argument. *See Bruen*, 142 S. Ct. at 2131 (explaining that analogous regulations found to be unconstitutional are evidence of unconstitutionality).

Additionally, the Government heavily relies upon the idea that the right to bear arms has historically been tied to the concept of "virtuous citizenry," which

---

[5] *See* Joseph G. S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249, 269-70 (2020) (discussing discriminatory nineteenth-century disarmament laws imposed on slaves, freedmen, and "tramps").

the Government reasons would exclude those under indictment. (ER-32). *See United States v. Vongxay*, 594 F.3d at 1111, 1118 (9th Cir. 2010). While this Court has held that "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably . . . tied to' the concept of a 'virtuous citizen[ry]'" and that "the right to bear arms does not preclude laws disarming the unvirtuous citizen," the cited sources of this statement do not point to a historical statute or historical analogue to bolster this claim. *Id.* Instead, while this concept of virtuous citizenry has been used to uphold modern laws disarming those deemed unvirtuous, the early articles promoting this theory fail to provide historical support for their position. *See* Joseph G. S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249, 275-83 (2020) (discussing that articles justifying the rise of the "unvirtuous" citizen theory fails to cite to any historical examples of laws disarming "unvirtuous" citizens). Rather, historical categorical disarmament of "unvirtuous citizens" was generally limited to racial and religious groups. *See id.* at 261-65. The danger in relying upon the unvirtuous citizenry theory is that "those historical travesties [could be used] to support taking someone's Second Amendment rights today." *United States v. Hicks*, 2023 WL 164170, at *6 (Jan. 9, 2023).

Additionally, relying upon the "unvirtuous citizenry" theory as a sufficient analogue to indictees invites the type of deference to legislatures expressly rejected

in *Bruen*.  *See Bruen*, 142 S. Ct. at 2131 (rejecting deference to legislatures on firearm regulations).  Instead, because the Government cannot solely justify § 922(n) as a public safety regulation and has failed to provide any distinctly or relevantly similar founding-era laws that demonstrate a broad tradition of firearms regulations like § 922(n), it has failed to meet its burden.  Thus, § 922(n) is unconstitutional under *Bruen*.

### 3. The Government cannot point to any evidence of founding-era firearm restrictions or historical analogues "distinctly" or "relevantly similar" to § 922(g)(3).

The Government faces a similar problem with § 922(g)(3) as Founding-era statutes concerning guns and intoxicants were few.  *United States v. Daniels*, 2023 WL 5091317, at *6-7 (August 9, 2023) (discussing that existing state laws were narrow in only banning the misuse of guns and discipline of state militias while under the influence of alcohol).  A collection of state firearm laws from 1607 to 1934 shows no Founding-era analogues to § 922(g)(3)'s disarmament of users of intoxicants.  *See* ROBERT J. SPITZER, GUNS ACROSS AMERICA: RECONCILING GUN RULES AND RIGHTS, 185-208 (Ox. Univ. Press 2015).  Firearm regulations barring users of intoxicants from using or possessing guns were narrowly limited to while they were under the influence—they were not regulations barring gun possession by regular users of intoxicants.  *See, e.g.*, 1907 Ariz. Sess. Laws 15 (applying restriction only to members of law enforcement who were intoxicated); 1899 S.C.

27

Acts 97 (making it a misdemeanor for people "under the influence of intoxicating liquors" to discharge firearms on or near public roads). Regardless of these statutes, "late-19th century" and "20th-century evidence . . . does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S. Ct. at 2154 n.28. Section 922(g)(3) itself is an enactment arising from the Gun Control Act of 1968. Pub. Law 90-618. The recent nature of this statute and the lack of a distinctly similar historical regulation prohibiting users of intoxicants from possessing firearms demonstrates that § 922(g)(3) is inconsistent with the Second Amendment. *See Bruen*, 142 S. Ct. at 2131. A total prohibition on firearms for "unlawful users" of a controlled substance is inconsistent with this Nation's historical regulatory framework in restricting an individual's rights to keep and bear arms.

Even if § 922(g)(3) was considered a uniquely modern regulation, there is limited support for restricting firearms for users of intoxicants based on similar historical analogues. In their response to Stennerson's Motion to Dismiss Indictment, the Government argued that "the most readily analogous firearms regulations are those that prohibit the possession of firearms by felons and those that prohibit possession by the mentally ill." (ER-39). The Government relied upon the statement that the *Heller* Court considered "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the

28

carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms" as presumptively lawful regulations. *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *see also McDonald,* 561 U.S. at 786 (holding that felon dispossession laws remained valid). (ER-43). Yet, for both felon-in-possession and laws targeting the mentally ill, the Government fails to provide sufficient analogues that justify § 922(g)(3) under the Second Amendment.

In comparing felon-in-possession bans to § 922(g)(3), the Government posited that both classes of individuals are "presumptively risky" due to their willingness to commit crimes. *See United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010) (noting that Congress passed § 922(g) to "keep guns out of the hands of presumptively risky people"). (ER-38–40). Yet in citing to felon-in-possession laws as "close" analogues to § 922(g)(3), the Government failed to provide any statute from the time surrounding the ratification of the Second Amendment that demonstrates that § 922(g)(3) is a part of this "Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Instead, the Government cited to the Seventh Circuit's discussion in *United States v. Skoien*, concerning a report from Pennsylvania's ratifying convention. 614 F.3d 638, 640 (7th Cir. 2010). At that convention, Pennsylvania's dissenters proposed amendments to the new Constitution that provided that citizens had a "personal right to bear arms 'unless

for crimes committed, or real danger of public injury.'" *Id.* (ER-40–41). While cited favorably by the Government, these "proposed amendments are not reflective of the Nation's early understanding of the scope of the Second Amendment right." *United States v. Rahimi*, 61 F.4th 443, 457 (2023). Because these proposed amendments were never adopted, the unadopted language cannot supplant the Second Amendment's enacted text that the people have an unqualified right that "shall not be infringed." U.S. CONST. amend. II. *See also Bruen*, 142 S. Ct. at 2137 ("[T]o the extent later history contradicts what the text [of the Second Amendment] says, the text controls.").

Regulations prohibiting the possession of firearms by the mentally ill cannot be analogous to regulations such as § 922(g)(3). The Government relies upon the argument that § 922(g)(3) is supported, under *Bruen*, by the historical practice of disarming the mentally ill or those who "exhibit a dangerous lack of self-control." *See United States v. Daniels*, 2023 WL 5091317, at *2 (August 9, 2023). As discussed by the 5th Circuit in *United States v. Daniels*, the relationship between mental illness and intoxication can be explained as: "Those who are 'briefly mentally infirm as a result of intoxication' are similar to those 'permanently mentally infirm' because of illness or disability." *Id.* at *9. The Government cited to the removal and practice of institutionalizing "lunatics," as evidence that "[i]f the insane could be wholly deprived of their liberty and property, the government

30

could necessarily take away their firearms." *Id.* However, while the Founders may have institutionalized the mentally ill, they continued to allow "alcoholics to possess firearms while sober." *Id.* at *10. In considering intoxication as "analogous to short-term mental illness," this could only justify disarming a citizen "while he is in a state comparable to lunacy." *Id.* at *9-10. Section 922(g)(3) prohibits "unlawful users" of a controlled substance from possessing firearms and does not require that the user be under the influence of a controlled substance while possessing the firearm. In the absence of an analogous statute completely disarming intoxicated individuals, the Government cannot provide a historical justification for "disarming a sober citizen who is not currently under an impairing influence." *Id.*

Thus, despite the public safety concerns the Government may have with firearm possession by individuals falling under § 922(g)(3)'s scope, in the absence of a historical tradition of "relatively similar" regulations fully disarming intoxicated individuals, the Government cannot justify § 922(g)(3) as constitutional under *Bruen*. *See Bruen*, 142 S. Ct. at 2132-33 (explaining that the "government may not simply posit that the regulation promotes an important interest").

31

## II.   THE DISTRICT COURT ERRED IN DETERMINING THAT THE STATUTORY DEFINITION OF "UNLAWFUL USER" IN 18 U.S.C. § 922(G)(3) IS NOT UNCONSTITUTIONALLY VAGUE.

**A.   Standard of Review and Reviewability**

The Court reviews de novo a challenge to the constitutionality of a statute on void for vagueness grounds. *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001) (citing *United States v. Cooper*, 173 f.3d 1192, 1202 (9th Cir. 1999)).

**B.   Section 922(g)(3) is unconstitutionally vague on its face and as applied to Stennerson.**

18 U.S.C. § 922(g)(3) makes it unlawful for anyone "who is an unlawful user of or addicted to any controlled substance" to possess a firearm.  18 U.S.C. § 922(g)(3).  Congress has not defined the term "unlawful user" in the statute. Stennerson maintains that § 922(g)(3) is unconstitutionally vague on its face and as applied because it fails to properly notify ordinary people of what conduct constitutes a violation.  Specifically, § 922(g)(3) fails to define "unlawful user" or give notice of a temporal requirement between unlawful drug use and gun possession.  Section 922(g)(3) undermines separation of powers principles because it invites the judiciary to perform legislative functions in defining a criminal offense.

The Fifth Amendment provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  The Government violates the Fifth Amendment's Due Process Clause when it takes

32

away someone's life, liberty, or property under vague criminal statutes that fail to

"give ordinary people fair notice of the conduct it punishes, or [are] so standardless

that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 598

(2015). Vague laws also undermine the careful balance struck by the separation of

powers between the branches. *See United States v. Davis*, 139 S. Ct. 2319, 2325

(2019). "Only the people's elected representatives in the legislature are authorized

to 'make an act a crime.'" *Id.* (quoting *United States v. Hudson*, 11 U.S. 32, 34

(1812)).

Stennerson can maintain a facial challenge to § 922(g)(3) because the statute

implicates a fundamental right. The Second Amendment is "among those

fundamental rights necessary to our system of ordered liberty." *McDonald v. City

of Chicago*, 561 U.S. 742, 778 (2010). Thus, a statute that implicates an

individual's Second Amendment right to keep and bear arms is subject to facial

challenges. To hold otherwise would risk treating the Second Amendment as a

"second class right." *McDonald*, 561 U.S. at 780. Additionally, while this Court

limits defendants to as-applied challenges unless First Amendment freedoms are

implicated, *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004), the

Supreme Court in *Johnson v. United States*, rejected the notion that a statute is

facially void "only if it is vague in all its applications."  576 U.S. 591, 603 (2015).[6]

In cases following *Johnson*, the Supreme Court considered facial vagueness claims

without first requiring the defendants to make a showing of as-applied vagueness.

*See Johnson*, 576 U.S. at 603; *Sessions v. Dimaya*, 138 S. Ct. 1204, 1214 (2018);

*United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).[7]   As such, [w]hen Congress

passes a vague law, the role of the courts under our Constitution is not to fashion a

new, clearer law to take its place, but to treat the law as a nullity and invite

Congress to try again."  *Davis*, 139 S. Ct. at 2323.

Here, the imprecise scope of the term "unlawful user" renders § 922(g)(3)

unconstitutionally vague.  *See, e.g.*, *United States v. Morales-Lopez*, 2022 WL

2355920, at *8 (D. Utah, June 30, 2022) ("[Section 922(g)(3) is unconstitutionally

vague both because it fails to give ordinary people fair notice of what conduct it

prohibits and because it invites courts, rather than the legislature, to decide what

constitutes a crime.").  The indeterminate reach of § 922(g)(3) enhances concerns

regarding its arbitrary or discriminatory enforcement.  For example, because

§ 922(g)(3) fails to give notice of the conduct it prohibits by failing to define both

---

[6] In *Johnson*, the Supreme Court held that the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), was
unconstitutional on its face, even though there may be applications of the statute that do not post vagueness
problems.  *Id.* at 602 ("[A]lthough statements in some of our opinions could be read to suggest otherwise, our
holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct
that clearly falls within the provision's grasp.").

[7] While *Johnson*, *Dimaya*, and *Davis*, deal with facial challenges to statutes using the categorical approach,
consideration of the categorical approach went to determining whether the statute at issue was vague, not to whether
the defendant could bring a facial challenge to the applicable statute.  Nowhere in *Johnson*, *Dimaya*, and *Davis*, did
the Supreme Court indicate that it was applying a different standard to facial vagueness challenges because of the
supposed uniqueness of the categorical approach.

"user" and failing to provide a temporal proximity requirement, the term "unlawful user" could apply to someone who used an illegal drug several years ago or to someone who has been using daily for several years but would not be considered an "addict." *See, e.g.*, *id.* at *8-9 (discussing that "unlawful user" is less than "ongoing, frequent, habitual use," and does not need to be someone "who is presently under the influence of drugs"). Because the term 'unlawful user' could apply to a range of individuals, the Government cannot clearly define what type of person falls within the scope of section 922(g)(3). They are thus unable to provide a similar analogue that satisfies *Bruen's* test because they do not know what group of people section 922 (g)(3) targets. Additionally, "[B]ecause the term 'user' does not connote regular and ongoing use, it would be unclear to the ordinary person at what point he or she, after unlawfully using a controlled substance, may lawfully possess a firearm." *Id.* at *9. Because "unlawful user" does not differentiate between the range of possibilities, courts have added various modifying words seeking to clarify the term.[8]

---

[8] The 1st, 3rd, 6th, 7th, and 9th Circuits impose the word "regular" in attempting to define "unlawful user." *See, e.g.*, *United States v. Purdy*, 264 F.3d 809, 813 (9th Cir. 2001) (holding that the government must show the defendant took drugs with regularity, over an extended period of time); *United States v. Caparotta*, 676 F.3d 213, 216 (1st Cir. 2012) (discussing that an "unlawful user" is one who engages in regular use over a long period of time). The 2nd, 8th, and 11th Circuits describe an "unlawful user" as being "actively engaged." *See, e.g.*, *United States v. Carnes*, 22 F.4th 743, 748 (8th Cir. 2022) (describing that an "unlawful user" is one who has used recently enough to indicate that the individual is actively engaged in such conduct). The 2nd and 11th Circuits have also defined "unlawful user" as "ongoing" drug use. *See, e.g.*, *United States v. Edwards*, 348 F.3d 950, 953 (11th Cir. 2003) (per curiam) (holding that a defendant's drug use must be ongoing).

35

Additionally, courts have invented various temporal nexus requirements between illicit drug use and the possession of a firearm to avoid vagueness problems.[9] "[J]udicial efforts to add an element to the statute illustrate the way in which § 922(g)(3) runs afoul of separation-of-power principles." *Morales-Lopez*, 2022 WL 2355920, at *10. Court creations of temporal requirements serve as an example of "the legislature casting an overly broad net and leaving the judiciary to determine who stays in the net and who does not." *Id.* The variability in circuit decisions defining a temporal requirement in § 922(g)(3) makes it difficult to determine whether this variability "align[s] with the prohibitions Congress intended to enact." *Id.* at *9 (discussing that circuit decisions have failed to provide parameters to what qualifies as "'regular,' 'consistent,' 'prolonged,' 'habitual,' or 'contemporaneous.'"). The additional language and temporal proximity provisions not only step into Congress's role but further fail to provide clarifying consistency in informing individuals on what § 922(g)(3) exactly prohibits. As discussed in *Johnson*, there is strong evidence that a statute is unconstitutionally vague when courts fail to offer consistent interpretations and applications of a statute. *Johnson*, 576 U.S. at 598 ("[T]he failure of 'persistent

---

[9] *See, e.g.*, *Purdy*, 264 F.3d at 813 (requiring contemporaneous with a defendant's firearm purchase); *Caparotta*, 676 F.3d at 216 (requiring "proximate to or contemporaneous with the possession of the firearm"); *United States v. Hassan*, 26 F.4th 610, 616 (4th Cir. 2022) (using close in time to the defendant's firearm purchase); *United States v. Augustin*, 376 F.3d 135, 138-39 (3rd Cir. 2004) (providing temporal requirement of "at or about the time of the possession of the firearm").

efforts . . . to establish a standard' can provide evidence of vagueness . . ..
[R]epeated attempts and repeated failures to craft a principled and objective
standard . . . confirm[s] its hopeless indeterminacy.").

The inability to determine what specific conduct is prohibited under
§ 922(g)(3) makes the statute void for vagueness. *See Morales-Lopez*, 2022 WL
2355920, at *11 (discussing that only when courts have impermissibly imposed a
temporal nexus requirement does § 922(g)(3) possess an identifiable specific type
of conduct). Because the term "user" is open-ended and there is no explicit
statutory temporal requirement, an ordinary citizen would not know when his or
her conduct in using a controlled substance may result in the forfeiture of his or
her Second Amendment rights. Because only a court's unlawful intrusion into the
legislative function by imposing a temporal proximity requirement can potentially
save § 922(g)(3), a limiting construction cannot save § 922(g)(3) from being
unconstitutionally vague on its face. *See Dimaya*, 138 S. Ct. at 1212.

Not only is § 922(g)(3) vague on its face, but the statute is also vague as
applied to Stennerson. No controlled substance was recovered from Stennerson's
person when police seized the CZ 9mm firearm on March 30, 2022. No evidence
was obtained indicating that Stennerson was on a controlled substance on the night
of March 30, 2022. The only evidence that Stennerson is an "unlawful user"
consisted of his pending state felony drug possession charges and his admission

37

that he used a "shot" daily. The facts of this case are markedly different from others whereas applied challenges were rejected. *See, e.g.*, *United States v. Cook*, 970 F.3d 866, 877-78 (7th Cir. 2020) (rejecting as applied challenge where the defendant had been using for ten years, had smoked two blunts on the day of his arrest, and his person and car smelled of marijuana when he was stopped and found holding a firearm); *United States v. Bramer*, 832 F.3d 908, 909-10 (8th Cir. 2016) (rejecting as applied challenge when defendant was found using marijuana while possessing a firearm); *United States v. Hasson*, 26 F.4th 610, 616-17 (4th Cir. 2022) (rejecting as applied challenge where defendant tested positive for opioids and had amassed numerous weapons). Based upon the above, it is apparent the § 922(g)(3) is unconstitutional on its face and as applied to Stennerson.

## VII. CONCLUSION

For these reasons, this Court should reverse the district court's dismissal of Stennerson's motion to dismiss and find that 18 U.S.C. § 922(n) and 18 U.S.C. § 922(g)(3) are unconstitutional following the Supreme Court's decision in *Bruen*. In the alternative, this Court should find that 18 U.S.C. § 922(g)(3) is unconstitutionally vague on its face and as applied to Stennerson.

RESPECTFULLY SUBMITTED this 21st day of September, 2023.

BY:   /s/ Gillian Gosch
        GILLIAN GOSCH
        Assistant Federal Defender
        Counsel for Defendant-Appellant

## VIII.  STATEMENT OF RELATED CASES

The undersigned, counsel of record for Appellant, is not aware of any related

cases pending in this Court.

JAREN MICHAEL STENNERSON
Defendant-Appellant

BY:   /s/ Gillian Gosch
     GILLIAN GOSCH
     Assistant Federal Defender
     Counsel for Defendant-Appellant

## IX.   CERTIFICATE OF COMPLIANCE
### PURSUANT TO FED. R. APP. P. 32(a)(7)(C)
### and CIRCUIT RULE 32-1
### FOR CASE NO. 23-1439

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, this opening brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 7,070 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  (Opening briefs must not exceed 14,000 words, excluding tables and certificates).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365, in Times New Roman 14.

DATED this 21st of September, 2023.

JAREN MICHAEL STENNERSON
Defendant-Appellant

BY:   /s/ Gillian Gosch
        GILLIAN GOSCH
        Assistant Federal Defender
        Counsel for Defendant-Appellant

40

## X. CERTIFICATE OF MAILING
Fed. R. App. P. Rule 25

I hereby certify that on September 21, 2023, I electronically filed the

foregoing with the Clerk of Court for the United States Court of Appeals for the

Ninth Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

Jaren Michael Stennerson
Reg. # - 33454-510
U.S.P. Terre Haute
United States Penitentiary
P.O. Box 33
Terre Haute, IN 47808
      Defendant-Appellant

BY:  /s/ Gillian Gosch
      GILLIAN GOSCH
      Assistant Federal Defender
      Counsel for Defendant-Appellant