**Ninth Circuit Court of Appeals No. 23-1439**
**District Court No. CR-22-139-BLG-SPW**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**
v.

**JAREN MICHAEL STENNERSON**,

**Defendant-Appellant.**

---

**EXCERPTS OF RECORD -**
**VOLUME 1 OF 1**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION
HONORABLE SUSAN P. WATTERS
UNITED STATES DISTRICT COURT JUDGE, PRESIDING

RACHEL JULAGAY
Federal Defender
**\*GILLIAN E. GOSCH**
Assistant Federal Defender
Federal Defenders of Montana
175 N. 27th Street, Suite 401
Billings, Montana 59101
Telephone: (406) 259-2459
Counsel for Defendant Appellant

SUBMITTED: September 21, 2023.

## <u>INDEX</u>

Judgment,
Docket No. 42 (filed July 12, 2023) ............................................................3

Plea Agreement
Docket No. 29 (Filed March 6, 2023)........................................................10

Order on Motion to Dismiss Indictment,
Docket No. 26 (Filed February 24, 2023)..................................................19

United States' Response to Defendant's Motion to Dismiss Indictment,
Docket No. 23 (January 10, 2023)..............................................................25
   Government's Exhibit B, Doc. No. 23-1 .............................................57

Brief in Support of Motion to Dismiss,
Docket No. 22 (December 28, 2022)..........................................................61

Motion to Dismiss Indictment,
Docket No. 21 (December 28, 2022)..........................................................78

Indictment,
Docket No. 2 (November 18, 2022)............................................................80

Notice of Appeal,
Docket No. 44 (Filed July 12, 2023) .........................................................83

Docket Sheet .............................................................................................85

Certificate of Service ...............................................................................91

**[The Presentence Investigation Report,
a sealed document, is filed under separate cover.]**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| **JAREN MICHAEL STENNERSON** | Case Number: CR 22-139-BLG-SPW-1<br>USM Number: **33454-510**<br>**Gillian E. Gosch**<br>Defendant's Attorney |

## THE DEFENDANT:

| | | |
|---|---|---|
| ☒ | pleaded guilty to count(s) | **1 and 2** |
| ☐ | pleaded nolo contendere to count(s) which was accepted by the court | |
| ☐ | was found guilty on count(s) after a plea of not guilty | |

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18 U.S.C. § 922(g)(3) Prohibited Person In Possession Of A Firearm. Forfeiture Allegation | 03/30/2022 | 1 |
| 18 U.S.C. § 922(n) Receipt Of Firearm By Person Under Indictment For Felony and Criminal Forfeiture. | 03/30/2022 | 2 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**July 12, 2023**
Date of Imposition of Judgment

*Susan P. Watters*
Signature of Judge

**Susan P. Watters**
**United States District Judge**
Name and Title of Judge

**July 12, 2023**
Date

ER_3

AO 245B (Rev. 10/21) Judgment in a Criminal Case                                                    Judgment -- Page 2 of 7

DEFENDANT:        JAREN MICHAEL STENNERSON
CASE NUMBER:      CR 22-139-BLG-SPW-1

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: twenty-one (21) months, to run concurrent on each count and concurrent with any sentences imposed in the Montana Thirteenth Judicial District Court cases reflected in ¶¶30-33 of the PSR: DC 2019-0162, DC 2019-1061, DC 2020-1067 and DC 2022-0359.

☒     The court makes the following recommendations to the Bureau of Prisons:
      (1) Defendant shall participate in the Bureau of Prisons' 500-hour Residential Drug Treatment Program (RDAP) if eligible.
      (2) Defendant shall be placed at the Bureau of Prisons' facility at FCI Yankton in South Dakota for proximity to family.

☒     The defendant is remanded to the custody of the United States Marshal.
☐     The defendant shall surrender to the United States Marshal for this district:

      ☐     at                               ☐     a.m.    ☐     p.m.    on

            ☐     as notified by the United States Marshal.

☐     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

            ☐     before 2 p.m. on
            ☐     as notified by the United States Marshal.
            ☐     as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:


      Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.



                                              UNITED STATES MARSHAL

                                              By: _____
                                              DEPUTY UNITED STATES MARSHAL


                                                                                    ER_4

AO 245B (Rev. 10/21) Judgment in a Criminal Case

Judgment -- Page 3 of 7

DEFENDANT:     JAREN MICHAEL STENNERSON
CASE NUMBER:    CR 22-139-BLG-SPW-1

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:  three (3) years, to run concurrent on each count and concurrent with the Montana Thirteenth Judicial District Court cases previously mentioned.

# MANDATORY CONDITIONS

1.    You must not commit another federal, state or local crime.

2.    You must not unlawfully possess a controlled substance.

3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

        ☐    The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. (*check if applicable*)

4.  ☐  You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. (*check if applicable*)

5.  ☒  You must cooperate in the collection of DNA as directed by the probation officer. (*check if applicable*)

6.  ☐  You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. (*check if applicable*)

7.  ☐  You must participate in an approved program for domestic violence. (*check if applicable*)

      You must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

ER_5

AO 245B (Rev. 10/21) Judgment in a Criminal Case

Judgment -- Page 4 of 7

DEFENDANT:       JAREN MICHAEL STENNERSON
CASE NUMBER:     CR 22-139-BLG-SPW-1

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. I understand additional information regarding these conditions is available at https://www.mtp.uscourts.gov/post-conviction-supervision.

Defendant's Signature _____     Date _____

ER_6

AO 245B (Rev. 10/21) Judgment in a Criminal Case                                                          Judgment -- Page 5 of 7

DEFENDANT:          JAREN MICHAEL STENNERSON
CASE NUMBER:        CR 22-139-BLG-SPW-1

# SPECIAL CONDITIONS OF SUPERVISION

1.    You must participate in an outpatient program for mental health treatment as approved by the probation officer. You must remain in the program until you are released by the probation officer in consultation with the treatment provider. You must pay part or all of the costs of this treatment as directed by the probation officer.

2.    You must submit your person, residence, place of employment, vehicles, and papers, to a search, with or without a warrant by any probation officer based on reasonable suspicion of contraband or evidence in violation of a condition of release. Failure to submit to search may be grounds for revocation. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. You must allow seizure of suspected contraband for further examination.

3.    You must abstain from the consumption of alcohol and are prohibited from entering establishments where alcohol is the primary item of sale.

4.    You must participate in substance abuse testing to include not more than 365 urinalysis tests, not more than 365 breathalyzer tests, and not more than 36 sweat patch applications annually during the period of supervision. You must pay part or all of the costs of testing as directed by the probation officer.

5.    You must participate in and successfully complete an outpatient program of substance abuse treatment as approved by the probation officer. You must remain in the program until you are released by the probation officer in consultation with the treatment provider. You must pay part or all of the costs of this treatment as directed by the probation officer.

6.    You must not purchase, possess, use, distribute or administer marijuana, including marijuana that is used for recreational or medicinal purposes under state law.

7.    You must not possess, ingest or inhale any psychoactive substances that are not manufactured for human consumption for the purpose of altering your mental or physical state. Psychoactive substances include, but are not limited to, synthetic marijuana, kratom and/or synthetic stimulants such as bath salts and spice.

8.    You must comply with all child support obligations and/or pay child support as ordered.

AO 245B (Rev. 10/21) Judgment in a Criminal Case                                    Judgment -- Page 6 of 7

DEFENDANT:        JAREN MICHAEL STENNERSON
CASE NUMBER:      CR 22-139-BLG-SPW-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments.

| | Assessment | JVTA Assessment** | AVAA Assessment* | Fine | Restitution |
|---|---|---|---|---|---|
| TOTALS | $200.00 | $  0.00 | $  0.00 | $.00 | $.00 |

☐    The determination of restitution is deferred until    *An Amended Judgment in a Criminal Case*
☐    *(AO245C)* will be entered after such determination.
     The defendant must make restitution (including community restitution) to the following payees in the
     amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment.
However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

☐   Restitution amount ordered pursuant to plea agreement $
☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid
     in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment
     options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).
☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:
     ☐   the interest requirement is waived for      ☐   fine           ☐   restitution
         the
     ☐   the interest requirement for the            ☐   fine           ☐   restitution is modified as
                                                                              follows:

*Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
**Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after
September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 10/21) Judgment in a Criminal Case

Judgment -- Page 7 of 7

DEFENDANT: JAREN MICHAEL STENNERSON
CASE NUMBER: CR 22-139-BLG-SPW-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☒ Lump sum payments of $ 200 due immediately, balance due

    ☐ not later than                 , or

    ☒ in accordance with    ☐ C,    ☐ D,    ☐ E, or    ☒ F below; or

**B** ☐ Payment to begin immediately (may be combined with  ☐ C,   ☐ D, or   ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment;
    or

**D** ☐ Payment in equal 20 *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from
    imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release
    from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that
    time; or

**F** ☒ Special instructions regarding the payment of criminal monetary penalties:
    **Criminal monetary penalty payments are due during imprisonment at the rate of not less than $25.00 per**
    **quarter, and payment shall be through the Bureau of Prisons' Inmate Financial Responsibility Program.**
    **Criminal monetary payments shall be made to the Clerk, United States District Court, James F. Battin Federal**
    **Courthouse, 2601 2nd Ave North, Ste 1200, Billings, MT 59101 or online at**
    **https://www.pay.gov/public/form/start/790999918. Please see www.mtd.uscourts.gov/criminal-debt for more**
    **information.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

o   Joint and Several
    See above for Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and
    Several Amount, and corresponding payee, if appropriate.

    ☐ Defendant shall receive credit on his restitution obligation for recovery from other defendants who contributed to the same
    loss that gave rise to defendant's restitution obligation.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☒ The defendant shall forfeit the defendant's interest in the following property to the United States:
    CZ82 9mm cal. pistol SN: 123915
    63 rounds of 9mm ammunition

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA Assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

ER_9

**JULIE R. PATTEN**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 Second Ave. N., Suite 3200**
**Billings, MT 59101**
**Phone: (406) 657-6101**
**Fax: (406) 657-6989**
**E-mail: Julia.Patten@usdoj.gov**

FILED

MAR 0 6 2023

Clerk, U S District Court
District Of Montana
Billings

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 22-139-BLG-SPW** |
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| **JAREN MICHAEL STENNERSON,** | |
| Defendant. | |

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United

States, represented by Assistant U.S. Attorney Julie R. Patten, and the defendant,

Jaren Michael Stennerson, and his attorney, Gillian Gosch, have agreed upon the

following:

1.     **Scope:**  This plea agreement is between the United States Attorney's

Office for the District of Montana and the defendant.  It does not bind any other

AUSA     DEF     ATTY     3/3/23 Date                                    Page 1

federal, state or local prosecuting, administrative or regulatory authority, or the
United States Probation Office.

    **2.**    **Charge:**  The defendant agrees to plead guilty to the indictment and
admit the forfeiture allegation. The indictment charges the crimes of prohibited
person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3) (count 1)
and receipt of a firearm by person under indictment for a felony, in violation of 18
U.S.C. § 922(n) (count 2).  Count 1 carries a maximum penalty of 10 years
imprisonment, a $250,000 fine, three years of supervised release, and a $100
special assessment.  Count 2 carries a maximum penalty of five years
imprisonment, a $250,000 fine, three years of supervised release, and a $100
special assessment.

    **Forfeiture**:  The defendant agrees to abandon and disclaim any right or
interest in the subject firearm, and consents to the destruction or disposition of that
firearm as provided for by the policies and procedures of the Bureau of Alcohol,
Tobacco, Firearms, and Explosives or the Department of Homeland Security

    **3.**    **Nature of the Agreement:**  The parties agree that this plea agreement
will be governed by Rule 11(a)(2), *Federal Rules of Criminal Procedure*.  The
defendant and the United States agree that, with the consent of the Court, the
defendant will enter a plea of guilty to the indictment and reserve his right to
appeal the denial of his motion to dismiss. If the defendant prevails on appeal, then

| AUSA | DEF | ATTY | Date | Page 2 |

he understands that he will be able to withdraw his plea of guilty. The parties acknowledge that this conditional plea agreement and reservation also requires the consent of the Court, and that if that consent is not given, this agreement is void and the case may be set for trial.

4.　**Admission of Guilt:**　The defendant will plead guilty because the defendant is in fact guilty of the charges contained in the indictment.　In pleading guilty to count 1 of the indictment, the defendant acknowledges that:

> **First**, the defendant knowingly possessed a firearm;
>
> **Second**, at the time he possessed the firearm the defendant was an unlawful user of any controlled substance
>
> **Third**, the firearm was shipped in interstate or foreign commerce.

In pleading guilty to count 2 of the indictment, the defendant acknowledges that:

> **First**, the defendant was under indictment for a felony;
>
> **Second**, the defendant willfully received a firearm that had been shipped or transported between a foreign nation and the United States.

5.　**Waiver of Rights by Plea:**

> (a)　The government has a right to use against the defendant, in a prosecution for perjury or false statement, any statement that the defendant gives under oath during the plea colloquy.



| AUSA | DEF | ATTY | Date |

Page 3

ER_12

(b)     The defendant has the right to plead not guilty or to persist in a plea of not guilty.

(c)     The defendant has the right to a jury trial unless the defendant, by written waiver, consents to a non-jury trial.  The government must also consent and the Court must approve a non-jury trial.

(d)     The defendant has the right to be represented by counsel, and if necessary, have the court appoint counsel, at trial and at every other stage of these proceedings.

(e)     If the trial is a jury trial, the jury would be composed of 12 laypersons selected at random.  The defendant and defense attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.  The jury would be instructed that the defendant is presumed innocent, and that it could not convict the defendant unless, after hearing all the evidence, it was persuaded of the defendant's guilt beyond a reasonable doubt.

(f)     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he was persuaded of the defendant's guilt beyond a reasonable doubt.

| AUSA | DEF | ATTY | 3\3\23 |
| | | | Date |

Page 4

(g)     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those government witnesses and the defense attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on the defendant's own behalf. If the witnesses for the defendant would not appear voluntarily, their appearance could be mandated through the subpoena power of the Court.

(h)     At a trial, there is a privilege against self-incrimination so that the defendant could decline to testify and no inference of guilt could be drawn from refusal to testify. Or the defendant could exercise the choice to testify on his or her own behalf.

(i)     If convicted, and within 14 days of the entry of the Judgment and Commitment, the defendant would have the right to appeal the conviction to the United States Court of Appeals for the Ninth Circuit for review to determine if any errors were made which would entitle the defendant to reversal of the conviction.

(j)     The defendant has a right to have the district court conduct the change of plea hearing required by Federal Rule of Criminal Procedure 11. By execution of this agreement, the defendant expressly waives that right and agrees

AUSA     DEF     ATTY     Date                                        Page 5

to hold that hearing before, and allow the Rule 11 colloquy to be conducted by, the U.S. Magistrate Judge.

(k)     If convicted in this matter, a defendant who is not a citizen of the United States may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

The defendant understands that by pleading guilty pursuant to this agreement, defendant is waiving all the rights set forth in this paragraph. The defendant's attorney has explained these rights and the consequences of waiving these rights.

**6.     Recommendations:**  The United States will recommend the defendant's offense level be decreased by two levels for acceptance of responsibility, under USSG §3E1.1(a), and will move for an additional one level, under USSG §3E1.1(b), if appropriate under the Guidelines, unless the defendant is found to have obstructed justice prior to sentencing under USSG §3C1.1, or acted in any way inconsistent with acceptance of responsibility. The parties reserve the right to make any other arguments at the time of sentencing. The defendant understands that the Court is not bound by this recommendation.

**7.     Sentencing Guidelines:**  Although advisory, the parties agree that the U.S. Sentencing Guidelines must be applied, and a calculation determined, as part of the protocol of sentencing to determine what sentence will be reasonable.

AUSA     DEF     ATTY     Date     3/3/23

Page 6

8.      **Waiver of Appeal of the Sentence:**

The defendant acknowledges that 18 U.S.C. § 742 affords the right to appeal the sentence imposed in this case. In consideration for the government's concessions in this agreement, the defendant waives any and all right to directly appeal any aspect of the sentence, including conditions of probation or supervised release. The defendant reserves the right to appeal the denial of his motion to dismiss.

The defendant also waives the right to challenge the sentence in a collateral proceeding pursuant to 28 U.S.C. § 2255.  This waiver does not prohibit the right to pursue an action alleging ineffective assistance of counsel.

9.      **Voluntary Plea:**  The defendant and the defendant's attorney acknowledge that no threats, promises, or representations have been made to induce the defendant to plead guilty, and this agreement is freely and voluntarily endorsed by the parties.

10.     **Detention/Release After Plea:**  Pursuant to 18 U.S.C. § 3143(a)(2), the defendant acknowledges that the defendant will be detained upon conviction unless (A)(i) the Court finds there is a substantial likelihood that a motion for acquittal or new trial will be granted or (ii) this agreement provides that the United States will recommend that no sentence of imprisonment be imposed and (B) the Court finds, by clear and convincing evidence, that the defendant is not

| AUSA | DEF | ATTY | Date 3\|3\|23 | Page 7 |

likely to flee or pose a danger to any other person or the community.  Then, if exceptional circumstances exist, the defendant may be released upon conditions.

**12.**    **Breach:**  If the defendant breaches the terms of this agreement, or commits any new criminal offenses between signing this agreement and sentencing, the U.S. Attorney's Office is relieved of its obligations under this agreement.

**12.**    **Entire Agreement:**  Any statements or representations made by the United States, the defendant, or defense counsel prior to the full execution of this plea agreement are superseded by this plea agreement.  No promises or representations have been made by the United States except as set forth in writing in this plea agreement.  This plea agreement constitutes the entire agreement between the parties.  Any term or condition which is not expressly stated as part of this plea agreement is not to be considered part of the agreement.

JESSE A. LASLOVICH
United States Attorney

JULIE R. PATTEN
Assistant U.S. Attorney
Date: _____3/6/23_____

JAREN MICHAEL STENNERSON

AUSA     DEF     ATTY     Date
3/3/23

Defendant
Date: _3 - 3 - 23_____

_____

GILLIAN GOSCH
Defense Counsel
Date: _3 - 3 - 23_____

AUSA    DEF    ATTY    Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAREN MICHAEL STENNERSON,<br><br>Defendant. | CR 22-139-BLG-SPW<br><br><br>ORDER ON MOTION TO<br>DISMISS INDICTMENT |

Before the Court is Defendant Jaren Stennerson's Motion to Dismiss
Indictment. (Doc. 21). Stennerson argues that, pursuant to Fed. R. Crim. P.
12(b)(1), his indictment for being a prohibited person in possession of a firearm
under 18 U.S.C. § 922(g) and § 922(n) must be dismissed because those statutes
unconstitutionally infringe upon Stennerson's rights under the Second Amendment
of the U.S. Constitution. (Doc. 22 at 2). Stennerson additionally argues that § 922
(g)(3) is unconstitutionally vague. (*Id.*) The United States responds that the
sections have not been abrogated by the U.S. Supreme Court's decision in *New
York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), and that
binding Ninth Circuit precedent requires a finding of constitutionality. (Docs. 23
at 2 and 25 at 2). The Court finds that this matter can be resolved without a
hearing. For the reasons detailed herein, the motion is denied.

1

ER_19

## I.      Background

Defendant is charged on two counts: violation of 18 U.S.C. § 922(g)(3) –

Unlawful Drug User in Possession of a Firearm; and violation of 18 U.S.C. §

922(n) – Illegal Receipt of a Firearm by a Person under Indictment.  (Doc. 1).

Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that a

party may raise by pretrial motion any defense, objection, or request that the court

can determine without a trial on the merits.  A pretrial motion is proper when it

involves questions of law rather than fact.  *United States v. Shortt Acct. Corp.*, 785

F.2d 1448, 1452 (9th Cir. 1986).  The Court has determined that Defendant's

motion is appropriate for pre-trial resolution because it solely involves a question

of law.

## II.     Analysis

### A. *Challenges to § 922(g)(3) and (n) under* Bruen

Stennerson argues that, under *Bruen*, if the plain text of the Second

Amendment covers a person's conduct, then it is the government's burden to show

that a challenged limitation is "consistent with this Nation's historical tradition of

firearm regulation."  (Doc. 22 at 4 (citing *Bruen*, 142 S. Ct. at 2126)).  Stennerson

contends that his possession of a firearm while addicted to illegal substances and

while under indictment is presumptively covered by the Second Amendment and

2

so the government must prove that such regulations were commonly accepted during the founding era.

In *Bruen*, the Court held that the Second Amendment protects an individual's right to carry a handgun for self-defense outside the home, and, as relevant here, rejected a means-end scrutiny approach that had been applied by courts of appeals when assessing the constitutionality of firearms regulations. 142 S. Ct. at 2122, 2127. Instead, the Court held, a court must apply "[t]he test we set forth in *Heller*" and "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. In a concurring opinion, Justice Kavanaugh, joined by the Chief Justice, joined the Court's opinion in full but "underscore[d]" that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion "'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 2162 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626, 636 (2008)).

Two courts in this district have concluded that *Bruen* did not effectively overrule prior precedent regarding gun-ownership prohibitions on certain persons because *Heller* and Ninth Circuit caselaw applying *Heller* is not "clearly irreconcilable with the reasoning or theory of intervening higher authority [*Bruen*, in this instance]." *United States v. Boyd*, 1:20-CR-121-DLC-1, at \*6 (D. Mont.

3

Jan. 25, 2023) (quoting *United States v. Butts*, --- F. Supp. 3d ---, 2022 WL

16553037, at *3-4 (D. Mont. Oct. 31, 2022) (citing *Miller v. Gammie*, 335 F.3d

889, 893 (9th Cir. 2003) (en banc)).

   Both Judge Molloy and Judge Christensen held that *Bruen* barred the

previous means-end scrutiny standard, but not *Heller*'s express language regarding

lawful prohibitions on felons in possession of firearms. *Id.* In *United States v.*

*Vongxay*, the Ninth Circuit, applying *Heller*, determined that 18 U.S.C. §

922(g)(1), which bars felons from gun possession, was constitutional because it

was consistent with longstanding limitations on gun possession and because "the

right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e.

criminals) . . ." *Vongxay*, 594 F.3d 1111, 1118 (9th Ci. 2011) (citing Don B.

Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143,

146 (1986)).

   Likewise, the Ninth Circuit, applying *Heller*, concluded that habitual drug

users in possession of firearms pose the same dangers as felons and the mentally ill

and consequently that § 922(g)(3) is constitutional. *United States v. Dugan*, 657

F.3d 998, 999-1000 (9th Cir. 2011). The Court is bound by the Ninth Circuit's

holdings in *Vongxay* and *Dugan* because they neither have been explicitly

overruled nor are clearly irreconcilable with the Supreme Court's decision in

*Bruen*. Accordingly, the Court holds that § 922(g)(3) is not unconstitutional.

Although § 922(n) has not been squarely addressed in the caselaw, the prohibition on persons under indictment from acquiring firearms is underpinned by the same considerations as felons in possession: each stand for the principle that unvirtuous persons made be disarmed (in this case, temporarily, while their case is pending). *See Vongxay*, 594 F.3d at 1118.

B. *Challenge to § 922(g)(3) as void-for-vagueness*

Stennerson also argues that § 922(g)(3) is unconstitutionally vague because it fails to give ordinary people fair notice of what conduct is prohibited. (Doc. 22 at 11). There is a strong presumption that a statute is constitutional when a defendant raises a void-for-vagueness argument. *United States v. Harris*, 185 F.3d 999, 1003 (9th Cir. 1999) (citing *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963)). In the Ninth Circuit, unless First Amendment freedoms are implicated, defendants are limited to as-applied challenges. *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004). A statute is not unconstitutionally vague "if its language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993). The Ninth Circuit has applied a temporal limitation on the drug use covered by § 922(g)(3), meaning that as long as the evidence shows that a defendant's drug use is sufficiently consistent, prolonged, and close in time to their gun possession, the defendant is put on notice

5

ER_23

that they are an unlawful user of drugs and prohibited from firearm possession.

*United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001).

Here, the government has alleged that Stennerson's pending state criminal charge for possession of dangerous drugs and his admission of use of methamphetamine, including his admission that he is a methamphetamine addict, is sufficient to have put him on notice.  (Doc. 23 at 28).  Of course, the government must prove beyond a reasonable doubt that Stennerson was in fact addicted to or using illegal drugs at the time of his possession, but the facts alleged by the government are sufficient to support a finding that § 922(g)(3) is not unconstitutionally vague as applied to Stennerson.

## III.   Conclusion

Defendant's Motion (Doc. 21) is DENIED.

DATED this 24th day of February, 2023.

SUSAN P. WATTERS
United States District Judge

6

ER_24

**JULIE R. PATTEN**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 2nd Avenue North, St. 3200**
**Billings, Montana 59101**
**Phone: (406) 657-6101**
**FAX: (406) 657-6058**
**E-mail: Julia.Patten@usdoj.gov**


**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 22-139-BLG-SPW** |
| **Plaintiff,** | |
| **vs.** | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| **JAREN MICHAEL STENNERSON,** | |
| **Defendant.** | |

Jaren Stennerson is charged in a two-count indictment with unlawful user of

a controlled substance in possession of a firearm, in violation of 18 U.S.C. §

922(g)(3) and receipt of firearm while under indictment, in violation of 18 U.S.C. §

922(n). Stennerson now moves to dismiss both counts of his indictment arguing

1

ER_25

that 18 U.S.C. §§ 922(g)(3) and 922(n) are unconstitutional after the Supreme

Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct.

2111 (2022). Doc. 21, 22. Stennerson also argues that § 922(g)(3) is

unconstitutionally vague, on its face and as applied. *Id.*

Stennerson's claim fails because the Second Amendment's protections do

not extend to the possession of firearms by unlawful users of controlled substances,

or those pending felony charges. Both § 922(g)(3) and § 922(n) fall within the

nation's long-standing tradition of disarming citizens who engage in criminal

activity, those with mental impairments, or those who were otherwise deemed

dangerous.

Finally, Stennerson cannot show that § 922(g)(3) is unconstitutionally vague

as applied to him because his routine and prolonged use of methamphetamine was

contemporaneous to his gun possession which put him on notice he was an

"unlawful user." Because his challenge does not pertain to a First Amendment

right, he cannot maintain a facial challenge for vagueness under Ninth Circuit

precedent.

**ARGUMENT**

The Second Amendment states that it is "the right of the people to keep and

bear Arms" and that right "shall not be infringed." U.S. Const. Amend. II.

2

However, that right is not unlimited. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

The Supreme Court has recognized that the Second Amendment allows a "variety" of firearms regulations. *Heller*, 554 U.S. at 636. The Supreme Court has stressed that its decisions apply to "law-abiding, responsible citizens" and do not "cast doubt on longstanding prohibitions of the possession of firearms by felons." *Heller*, 554 U.S. at 626, 635.

While the Supreme Court's recent decision in *Bruen* defined the framework for analyzing Second Amendment challenges, it did not abrogate long-standing legal precedent or the regulatory prohibitions of certain persons possessing firearms. *Bruen* analyzed the constitutionality of a New York firearm licensing scheme where an applicant had to show "proper cause" in order to obtain a license to carry a handgun for self-defense. 142 S. Ct. at 2123. The Court held the New York statute violated the Second Amendment because it allowed officials to restrict "law-abiding citizens" from exercising a fundamental right. *Id*. at 2156. In doing so, the Court defined the analytical framework for determining whether a firearm regulation is constitutional. The *Bruen* framework established that courts must assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding. *Id*. at 2131. First, the court must

determine if the Second Amendment's plain text covers an individual's conduct. *Id*. at 2126. If it does not, the analysis ends, and the regulation is deemed valid. *Id.*   If the conduct is covered by the Amendment's text, the conduct is presumed protected.   *Id.*   The government must then demonstrate that the regulation, in this case a firearms regulation impinging on a Second Amendment right, is consistent with "this Nation's historical tradition."   *Id*.   Drawing on that tradition, *Heller* recognized, and *Bruen* reiterated, that the right to bear arms belongs only to "law-abiding, responsible citizens." *Id*. at 2131 (*quoting Heller*, 554 U.S. at 635).

The Court's decision in *Bruen* did not undermine its precedent in *Heller* or *McDonald v. City of Chicago*, 561 U.S. 742 (2010).   The Court applied "[t]he test we set forth in *Heller*" but made it "more explicit."   142 S. Ct. at 2131, 2134. The *Bruen* Court noted that this analogical inquiry required that the government need only "identify a well-established and representative historical *analogue*, not a historical *twin*."   *Id*. at 2133.   "Even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."   *Id*. at   2118.

Stennerson argues that both §§ 922(g)(3) and 922(n) impermissibly infringe upon his Second Amendment rights. Doc. 22 at 2. He also argues that § 922(g)(3)

violates his Fifth Amendment right because it is unconstitutionally vague on its face and as applied. He faces a heavy burden: "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

*Bruen* has not overruled precedent.   Binding precedent may be deemed overruled only "where the reasoning or theory of" the earlier "authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003).   That "is a high standard." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (citation omitted). "[T]ension" between cases is not enough. *Id*.   Thus, "[s]o long as [a] court can apply . . . prior precedent without running afoul of the intervening authority it must do so." *Id*.   *Bruen* does not come close to meeting that high standard. It merely did away with the "means-end scrutiny" "second step" that courts had applied in some Second Amendment cases.   *Bruen*, 142 S. Ct. at 2125-27.

## I.    Possession of firearms by unlawful users of controlled substances, or those facing felony indictment is not protected by the plain text of the Second Amendment.

The Court need not consider whether § 922(g)(3) or § 922(n) squares with the nation's historical tradition of gun regulation because its modest restriction

5

burdens no conduct covered by the Second Amendment's plain text. Stennerson

has the burden at this initial stage to show that the Second Amendment covers his

conduct. He cannot carry his burden because "the right to keep and bear arms"

does not cover the possession of firearms by "an *unlawful* user of or addicted to"

controlled substances or an indictee "receiv[ing] guns while under indictment."

A.   **An unlawful user of controlled substances is not a "law-abiding, responsible citizen" and thus is not protected under the Second Amendment.**

Section 922(g)(3) criminalizes the possession of firearms by any person

"who is an unlawful user of or addicted to any controlled substance." This

restriction does not run afoul of the Second Amendment, because the right

described by the Second Amendment only extends to "the people" – i.e. "law-

abiding, responsible" citizens keeping or bearing arms for "lawful purposes." *See*

*Heller,* 554 U.S. at 635; *Bruen,* 142 S. Ct. at 2156. In *Heller,* the Supreme Court

held that "the Second Amendment does not protect those weapons not typically

possessed by *law-abiding citizens* for lawful purposes." 554 U.S. at 625. This

interpretation of the Second Amendment's meaning "accords with the historical

understanding of the scope of the right." *Id.* Further, *Heller* expressly contemplated

that certain citizens were "disqualified" from keeping or bearing arms under the

Second Amendment. *Id.* at 635.

Similarly, *Bruen* repeatedly described the Second Amendment as limited to "law-abiding" citizens. 142 S. Ct. at 2122, 2131, 2133, 2134, 2138, 2150, 2156. The Court has made clear that "the people" described in the Second Amendment are "ordinary, law abiding, adult citizens." *Id*. at 2134. Consistent with that principle, *Bruen* approved "shall-issue" licensing regimes that "require applicants to undergo a background check or pass a firearms safety course."[1] *Id*. at 2139 n.9; *see id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible[.]"). In doing so, the Court had no need to analyze the history of shall-issue licensing regimes. Such regimes generally pass constitutional muster because they "are designed to ensure only that those bearing arms…are, in fact 'law-abiding, responsible citizens.'" *See id*. at 2139 n.9. This reasoning underscores that § 922(g)(3) – which aims to ensure that "those bearing arms" are "law-abiding, responsible citizens" – accords with the Second Amendment. *See id*. Because both *Bruen* and *Heller* define the right to bear arms as belonging to "law-abiding, responsible" citizens, *Heller,* 554 U.S. at 635; *Bruen,* 142 S. Ct. at 2156, or ordinary, law-abiding, adult citizens," *Bruen,*

_____

[1] A "shall issue" regime is one in which "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements." *Bruen*, 142 S. Ct. at 2123. By contrast, a "may issue" regime vests "authorities [with] discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria." *Id*. at 2124.

142 S. Ct. at 2122, 2134, unlawful users of controlled substances fall outside the

Second Amendment's protection. In sum, those who habitually, unlawfully use

controlled substances are neither "law-abiding" nor "responsible" and therefore are

not guaranteed the right to possess firearms under the Second Amendment. Section

922(g)(3) does not burden a constitutional right, and it is facially constitutional.

Moreover, excluding habitual lawbreakers from "the people" as contained

the text of the Second Amendment is consistent with scholarly opinions on the

subject. As the Ninth Circuit observed in *United States v. Vongxay*,

> [M]ost scholars of the Second Amendment agree that the right to bear arms
> was "inextricably . . . tied to" the concept of a "virtuous citizen[ry]" that
> would protect society through "defensive use of arms against criminals,
> oppressive officials, and foreign enemies alike," and that "the right to bear
> arms does not preclude laws disarming the unvirtuous citizens (i.e.
> criminals) . . . ."

594 F.3d 1111, 1118 (9th Cir. 2010) (quoting Don B. Kates, Jr., *The Second*

*Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986)); see also

Thomas M. Cooley, *A Treatise on Constitutional Limitations 40* (Boston, Little

Brown & Co. 1890) (explaining that constitutions protect rights for "the People"

excluding, among others, "the idiot, the lunatic, and the felon"). Accordingly, the

plain text of the Second Amendment does not guarantee unlawful users of

controlled substances the right to possess a firearm.

Stennerson argues that his possession of firearms, while a habitual drug user,

8

is protected under the Second Amendment's guarantee. Doc 22 at 5. But, Stennerson is not part of "the people" whom the Second Amendment protects because he is not a "law-abiding citizen." In an interview with law enforcement, he admitted to possessing a firearm and being a methamphetamine addict, using approximately a "shot a day" of methamphetamine. Gov't Ex. A at 8:57-9:20. As an admittedly daily user of methamphetamine, Stennerson undoubtedly was violating federal law at the time he possessed the firearm. Thus, he was not a law-abiding citizen the Second Amendment protects.

**B.      The right to "keep and bear Arms" does not cover receiving guns while under indictment.**

Similarly, Stennerson cannot show that the Second Amendment's text covers receiving a gun while under indictment. Section 922(n) states: It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to …receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." In contrast to the ban on gun possession by convicted felons, drug users, or some other groups, *see, e.g.* 18 U.S.C. § 922(g), § 922(n)'s restriction is narrow. First, "[b]y its own terms, § 922(n) does not prohibit *possession* of a weapon by someone under indictment, but only shipping, transportation, or receipt." *United States v. Laurent,* 861 F. Supp. 2d 71, 85 (E.D.N.Y. 2011). So, it

9

does not bar a person under felony indictment from continuing to possess any guns he had before the indictment. *Id.* at 85-87. "It merely maintains the *status quo* during the pendency of the indictment, a volatile period during which the stakes and stresses of pending criminal charges often motivate defendants to do violence to themselves or others." *United States v. Khatib,* No. 12-CR-190, 2012 WL 6086862, at *4 (E.D. Wis. Dec. 6, 2012).

Second, unlike the felon-in-possession prohibition, which is permanent, § 922(n)'s restriction "is temporary. It lasts only from indictment to conviction or acquittal." *Laurent,* 861 F.Supp. 2d at 102. "The prohibition ends with dismissal of the charges or acquittal (or conviction for an offense that does not bar gun possession) or becomes permanent if the defendant is, for example, convicted of a felony or a misdemeanor crime of domestic violence." *Khatib*, 2012 WL 6086862, at *4.

The narrow restriction of § 922(n) does not burden "the right to keep and bear arms." In *Heller,* the Supreme Court explained that "the most natural reading of 'keep arms' in the Second Amendment is to 'have weapons.'" 554 U.S. at 582. Section 922(n) does not burden that right because it "does not prohibit *possession* of a weapon." *Laurent*, 861 F. Supp. at 85. Section 922(n) did not impair Stennerson's ability to "keep" any arms he had before his indictment. Rather, he

simply coud not receive new ones during the time he was under indictment., *see* 18
U.S.C. § 922(n)*, conduct the Second Amendment's text does not address. *Cf.*
*Heller*, 554 U.S. at 626-27 (noting that the Court's opinion did not invalidate "laws
imposing conditions and qualifications on the commercial sale of arms"); *Nati'l*
*Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
700 F.3d 185 206 (5th Cir. 2012) (holding that laws did "not severely burden the
Second Amendment rights of 18-to-20-year olds because" they did not ban use or
possession but "imposed an age qualification on commercial firearm sales").

Similarly, "[a]t the time of the founding, as now, to 'bear' meant to
'carry.'" *Heller*, 554 U.S. at 584. "When used with 'arms,' however, the term has a
meaning that refers to carrying for a particular purpose—confrontation." *Id.* In
*Bruen*, the Supreme Court confirmed that "[t]his definition of 'bear' naturally
encompasses public carry" in addition to carrying a gun in one's home. 142 S. Ct.
at 2134. Section 922(n) does not burden this right either. Unlike the New York
licensing law that *Bruen* invalidated—which directly restricted citizens' ability to
publicly carry guns they otherwise lawfully possessed—§ 922(n)'s temporary
"receipt" restriction does not limit what citizens can do with their lawfully
possessed guns.

In some contexts, courts have suggested that the right to keep and

bear arms implies the right to obtain them. *Cf. Nat'l Rifle*, 700 F.3d at 204–05 (assuming, despite being inclined to hold otherwise, that the Second Amendment presumptively protects "the ability of 18-to-20-year-olds to purchase handguns from FFLs"). But nothing about that right implies a right of otherwise unarmed citizens to procure new arms once facing felony charges, but before the charges resolve. Obtaining a gun in that circumstance creates distinct risks because one could reasonably "infer a malevolent intent when an indictee finds it necessary to obtain a gun during the narrow period during which an indictment is pending knowing that he will have to give it up should he be convicted." *Khatib*, 2012 WL 6086862, at *4. Stennerson cannot show that the founders intended for "the right to keep and bear arms" to protect an indictee's right to obtain guns.

### C. The prohibition of drug users and addicts from possessing firearms squares with the nation's historical tradition, as does the restriction on receiving guns while under indictment.

Even if the Second Amendment's plain text covers Stennerson's conduct, his Second Amendment claims fail because both § 922(g)(3) and § 922(n) are "consistent with this Nation's historical tradition of firearm regulation." *See Bruen*, 142 S. Ct. at 2126. Under this part of the analysis, courts look to "historical analogies" to the challenged law to determine whether it resembles constitutionally

12

accepted restrictions. *Id.* at 2132. "Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id*. Among the features that make regulations fit for comparison, is "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 2133. In other words, where a historical and modern regulation impose similar burdens for similar reasons, they are more appropriate for analogy. While certain firearms regulations may have direct analogies to permissible restrictions present at the founding, some comparisons may "require a more nuanced approach" due to "societal concerns or dramatic technological changes." *Id*. at 2132.

The lengthy historical analysis in *Bruen* warns of the various pitfalls in evaluating historical analogues. For example, *Bruen* explains "English common-law practices and understandings at any given time in history cannot be indiscriminately attributed to the Framers of our own Constitution" and that "it [is] better not to go too far back into antiquity for the best securities of our liberties." *Id*. at 2136. By the same token, the Supreme Court cautioned "against giving post-enactment history more weight than it can rightly bear" when interpreting a constitutional command. *Id*. Lower courts must, therefore, carefully navigate

13

between the Scylla of antiquity and the Charybdis of recency to determine what the Framers understood the scope of the Second Amendment to be.

To assist courts in this endeavor, *Bruen* highlighted three historical indicators that a firearms regulation was unconstitutional. First, "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id*. at 2131. Second, where the societal problem has historically been addressed by means other than firearms regulation, that may serve as evidence that the challenged regulation is unconstitutional. *Id*. Third, if jurisdictions attempted to enact similar regulations that were rejected on constitutional grounds, "that rejection surely would provide some probative evidence of unconstitutionality." *Id*.

### 1.  Historical Analogues to Section 922(g)(3).

As *Bruen* instructs, appropriate historical analogues to Section 922(g)(3) will be similar in "how and why the regulations burden a law-abiding citizen's right to armed self-defense." 142 S. Ct. at 2132–33. Section 922(g) is a statute that criminalizes the possession of firearms by various classes of people. As explained, "Congress enacted the exclusions in § 922(g) to keep guns out of the hands of

14

presumptively risky people" including unlawful drug users and addicts. *See United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010). A review of early colonial laws has not revealed any statutes that prohibited possession by unlawful drug users—likely due to the recency of public laws concerning drug-use and addiction. Nevertheless, appropriate historical analogues will likely be regulations that disarm individuals based on their unlawful behavior or impaired judgment. Indeed, the two most readily analogous firearms regulations are those that prohibit the possession of firearms by felons and those that prohibit possession by the mentally ill. *Id*. at 684–685.

Unlawful users of controlled substances, like felons, have engaged in criminal behavior. "[By prohibiting possession by felons,] Congress sought to rule broadly—to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Scarborough v. United States*, 431 U.S. 563, 572, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) (internal quotation marks omitted). Similarly, the congressional intent in passing § 922(g)(3) was "to keep firearms out of the possession of drug abusers, a dangerous class of individuals." *United States v. Cheeseman*, 600 F.3d 270, 280 (3d Cir. 2010). Due to their willingness to engage in unlawful activity, Section 922(g) identifies both classes as being "presumptively risky" and unfit to possess

firearms. But an unlawful user of a controlled substance may, in many cases, be proven to have greater contempt for the law than a mere felon because they will typically exhibit criminal behavior—i.e., drug use—that is "consistent," "prolonged," and "contemporaneous" with the possession of firearms. *See United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001). Nevertheless, the historical treatment of felons under the Second Amendment is a close analogy to that of unlawful drug users. *See Bruen*, 142 S. Ct. at 2133 (requiring "historical analogue, not a historical twin.").

A robust discussion of the historical basis for prohibiting felons from possessing firearms is found in *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). There the Seventh Circuit cited a report of the Pennsylvania ratifying convention, in which Pennsylvania's dissenters proposed amendments to the new Constitution. *Id*. at 640. The report has been positively cited by the Supreme Court in *Heller* as a "highly influential" "precursor" to the Second Amendment. 554 U.S. at 604. "The report asserted that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.'" *Skoien*, 614 F.3d at 640. The Seventh Circuit also observed "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime." *Id*. (citing Stephen P. Halbrook, *The Founders' Second Amendment 273*

16

(2008)). In light of this history, the Seventh Circuit determined that "some categorical disqualifications are permissible" under the Second Amendment. *Id*. at 641.

This conclusion generally aligns with the historical practice of disarming people the Framers deemed to be dangerous or untrustworthy, such as those unwilling to swear an oath of allegiance to the colonies or the states, slaves, freed blacks, and native Americans. *See Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 200 (5th Cir. 2012); Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 LAW & HIST REV. 139, 157–60 (2007); Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 506–08 (2004) ("The law demonstrates that in a well-regulated society, the state could disarm those it deemed likely to disrupt society."). Although many of these laws were motivated, at least in part, by racial animus, they are nevertheless quintessential features of "this Nation's historical tradition of firearm regulation." *See Bruen*, 142 S. Ct. at 2126.

Regulations concerning unlawful users of controlled substances are also analogous to regulations prohibiting the possession of firearms by the mentally ill.

17

It should be uncontroversial that both classes consist of people who may present diminished mental capacity or impaired judgment.[2] *Yancey*, 621 F.3d at 685 (observing "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms.").

Colonial society at the time of the founding did not view persons with mental illness as being among those who could bear arms without "real danger of public injury." *Skoien*, 614 F.3d at 640. "[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry," which did not include individuals with a history of mental illness. *Yancey*, 621 F.3d at 684–85; see also Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?*, 36 Okla. L. Rev. 65, 96 (1983) ("Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded infants, idiots, lunatics, and felons [from possessing

---

[2] Title 27 C.F.R. § 478.11(a), containing the companion regulations to Section 922, defines "mental defective" as those determined, "as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease: [i]s a danger to himself or to others; or (2) [l]acks the mental capacity to contract or manage his own affairs." The Code defines that an "unlawful user of or addicted to any controlled substance" as "[a] person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician." 27 C.F.R. § 478.11(a)

firearms].""). Such individuals were often removed from the community at large through home confinement or involuntary commitment to welfare and penal institutions. *See, e.g.,* Gerald N. Grob, *The Mad Among Us: A History of the Care of America's Mentally Ill* 5-21, 29, 43 (1994). Moreover, "in eighteenth-century America, justices of the peace were authorized to 'lock up' 'lunatics' who were 'dangerous to be permitted to go abroad'" Carlton F.W. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L. J. 1371, 1377 (2009). These historical realities strongly suggest that the Framers did not understand the Second Amendment to guarantee those with mental illness the unqualified right to possess a firearm.

Critically, *Heller* held that the "longstanding prohibitions on the possession of firearms by felons and the mentally ill" comport with the Second Amendment, which only protects the "right of law-abiding, responsible citizens" to possess a firearm. *Heller's* commentary is not mere dicta. *Vongxay*, 594 F.3d at 1115. Indeed, the Supreme Court has repeatedly assured the presumptive validity of such laws under its Second Amendment holdings. *McDonald*, 561 U.S. 742, 786 (2010).

*Bruen* did nothing to disturb the decision in *Heller*. It only reiterated that the Second Amendment "is neither a regulatory straight-jacket nor a regulatory blank check." *Bruen*, 142 S. Ct. at 2133. Justice Kavanaugh, joined by Chief Justice

19

Roberts in a concurring opinion, noted the "presumptively lawful regulatory measures" described in *Heller*, including the "longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). Moreover, Justice Kavanaugh's concurrence observed that *Bruen* only concerned "may-issue" licensing regimes. *Id*. It did not reach "shall-issue" licensing regimes—which commonly disqualify felons, the mentally ill, and drug users. *Id*. These regimes, Justice Kavanaugh suggests are likely constitutional. *Id*. ("Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so.").

Both history and the Supreme Court's Second Amendment jurisprudence strongly demonstrate that disarming unlawful users of controlled substances is "consistent with this Nation's historical tradition of firearm regulation." Accordingly, even if the plain text of the Second Amendment guarantees a right to possess firearms for unlawful drug users, Section 922(g)(3) is a permissible restriction on that right.

//

//

//

2. **Section 922(n)'s restriction on receiving guns while under indictment is consistent with the historical tradition of restricting gun rights of citizens viewed by legislatures as unvirtuous or dangerous.**

Section 922(n) is "distinctly similar" to historical restrictions of substantially restricting the liberty of those credibly accused of wrongdoing. *See Bruen,* 142 S. Ct. at 2131. The constitutional question is not whether § 922(n)'s restriction has existed since the founding. Rather, courts considering present-day gun regulations must "reason[] by analogy." *Id*. at 2132.

As the Ninth Circuit has already recognized, "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably…tied to' the concept of a 'virtuous citizenry' and that, 'the right to bear arms does not preclude laws disarming the unvirtuous citizens.'"   *Vongxay*, 594 F.3d at 1118 (collecting scholarly sources).

Courts relying on this "'virtuous citizen' theory" have thus upheld "modern laws banning the possession of firearms by illegal aliens and juveniles— classes of people who might otherwise show, on a case-by-case basis, that they are not particularly dangerous." *Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019). In *National Rifle*, this Court rejected a Second Amendment challenge to § 922(b)(1) and (c)(1), which restrict the ability of people under 21 to buy handguns, calling that restriction "firmly historically rooted." 700 F.3d at

21

204. The court explained that the regulation "is consistent with a

longstanding tradition of targeting select groups' ability to access and to

use arms for the sake of public safety." *Id*. at 203.[3]

Courts have reasoned similarly for other categorical restrictions similar to

*Heller's* non-exhaustive list of presumptively lawful regulations. *See*,

*e.g., Yancey*, 621 F.3d at 684–87 (relying on historical evidence to uphold

§ 922(g)(3)'s prohibition of gun possession by illegal drug users); *United States v.*

*Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011) (holding that § 922(g)(8)'s prohibition

of gun possession by people under domestic-violence protective orders "is

consistent with a common-law tradition that the right to bear arms is limited to

peaceable or virtuous citizens"); *Skoien*, 614 F.3d at 640 (same for § 922(g)(9)'s

prohibition of gun possession by those convicted of misdemeanor crimes of

domestic violence); *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009)

(rejecting a Second Amendment challenge to § 922(x), which restricts the ability of

---

[3] *Bruen* abrogated *National Rifle* to the extent that it held that a gun regulation
could survive a Second Amendment challenge under means-end scrutiny, even if it
is not consistent with the nation's historical tradition of gun regulation. *See* 142 S.
Ct. at 2127 n.4. But this Court was "inclined to uphold the challenged federal laws
at step one of [its] analytical framework," *see Nat'l Rifle*, 700 F.3d at 204, which
relied on the historical record and was "broadly consistent with *Heller*," *see Bruen*,
142 S. Ct. at 2127. Nothing in *Bruen* abrogates this Court's or other courts'
historical analyses, which were typically considered part of "step one" under
courts' pre-*Bruen* case law

people under 18 to possess handguns, and explaining "that the founding generation would have regarded such laws as consistent with the right to keep and bear arms"). With limited exception, federal gun regulations uniformly have been upheld in the wake of *Bruen. United States v. Butts,* --- F. Supp.3d ---, 2022 WL 16553037 (D. Mont. October 31, 2022) (collecting cases).

Like the age-based restriction addressed in *National Rifle,* § 922(n) "is consistent with a longstanding tradition of targeting select groups' ability to access … arms for the sake of public safety." *See* 700 F.3d at 203. Section 922(n)'s legislative history shows that, like other categorical restrictions on select groups, it "reflects a concern with keeping firearms out of the hands of categories of potentially irresponsible persons." *Laurent,* 861 F. Supp. 2d at 82 (quoting *Barrett v. United States*, 423 U.S. 212, 220 (1976)) (ellipses omitted). It thus reflects a permissible legislative judgment that felony indictees are among the potentially dangerous or unvirtuous citizens whose gun rights the government may restrict. Even still, its narrow and temporary restriction on receipt burdens far less conduct than the categorical prohibition of possession by other groups, like convicted felons.

Although a person who has been indicted but not convicted is presumed innocent, a legislature's decision to restrict felony indictees' gun access is

23

consistent with historical public-safety laws. A grand jury has found probable cause to believe that a felony indictee has committed "the most serious category of crime deemed by the legislature to reflect 'grave misjudgment and maladjustment.'" *Medina*, 913 F.3d at 158 (quoting *Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017)). And, as noted, there is often good reason to "infer a malevolent intent when" someone responds to being indicted by procuring a gun. *See Khatib*, 2012 WL 6086862, at *4.

At the founding, moreover, a felony indictment foretold far severer consequences for the indictee than the loss of gun rights. The standard punishment for a felony was death. *Medina*, 913 F.3d at 158. ("Capital punishment for felonies was ubiquitous in the late Eighteenth Century and was the standard penalty for all serious crimes." (cleaned up)). It is "difficult to conclude" that the founding generation would have understood those standing accused of capital crimes, and thus facing death if convicted, to enjoy unfettered gun rights. *See id*. To the contrary, those under felony indictment were among the "unvirtuous citizens," *see Yancey*, 621 F.3d at 684–85, whom legislatures could lawfully disarm

Stennerson's claim that §§ 922(g)(3) and 922(n) are not supported by historical tradition fails, and his motion should be denied.

24

**II.    Stennerson cannot carry his heavy burden to show that § 922(g)(3) is unconstitutionally vague.**

Stennerson argues that § 922(g)(3) is unconstitutionally vague on its face and as applied because it fails to properly notify ordinary people of what constitute a violation. His argument fails because § 922(g)(3) is not unconstitutionally vague as applied to the specific facts and circumstances of his case, and under Ninth Circuit precent, facial attacks on statutes fail where an as applied analysis supports denial of a constitutional claim.

The Ninth Circuit has articulated well-established legal standards for analyzing a void-for-vagueness claim. In cases that do not implicate First Amendment freedoms, federal courts should "not consider whether a statute is unconstitutional on its face," but rather, should consider only "whether the statute is impermissibly vague *in the circumstances of this case*." *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004) (emphasis in original), citing *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2004); *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir. 1977) ("It is now established, however, that in cases not involving First Amendment claims a court may only consider a vagueness challenge on the facts of the case before it."), citing *United States v. Mazurie*, 419 U.S. 544, 550 (1975). Stennerson is limited to an as-applied analysis because his challenge does not implicate First Amendment freedoms. *See Rodriguez,* 360 F.3d

at 953. Accordingly, Stennerson's vagueness challenge cannot be aimed at the statute on its face but must be limited to the application of the statute to the particular conduct charged.

In seeking to have an act of Congress declared unconstitutionally vague, defendants face an uphill battle. Indeed, the Supreme Court, in rejecting a void-for-vagueness argument, held that there is a "strong presumptive validity that attaches to an Act of Congress," and "we have consistently sought an interpretation which supports the constitutionality of legislation." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963). The Ninth Circuit, citing *National Dairy Products*, agrees. *United States v. Harris*, 185 F.3d 999, 1003 (9th Cir. 1999) ("The presumption is that a statute is constitutional.").

In other words, "[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *National Dairy Products Corp.*, 372 U.S. at 32-33. A statute will "meet the requirement of 'certainty required by the Constitution if its language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993), citing *Turf Center, Inc. v. United States*, 325 F.2d 793, 795 (9th Cir. 1963).

26

The prohibition in § 922(g)(3) bars only those persons who are current drug users from possessing a firearm, and "[i]t is obvious that the tenses used throughout Title IV [including § 922(g) ] were chosen with care." *Scarborough*, 431 U.S. at 570, 97 S.Ct. 1963; *see also United States v. Jackson*, 480 F.3d 1014, 1021 (9th Cir.2007). Every circuit to have considered the question has demanded that the habitual abuse be contemporaneous with the gun possession. *See United States v. Patterson*, 431 F.3d 832, 839 (5th Cir. 2005); *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir.2004); *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir.2003), *vacated on other grounds*, 543 U.S. 1099, 125 S.Ct. 1047, 160 L.Ed.2d 993 (2005) (finding *Booker* error), *reinstated*, 414 F.3d 942 (8th Cir.2005); *United States v. Jackson*, 280 F.3d 403, 406 (4th Cir.2002); *United States v. Purdy*, 264 F.3d 809, 812-13 (9th Cir.2001). Thus the gun ban extends only so long as Stennerson abuses drugs.

The resolution of this challenge "turns on whether the language" of Section 922(g)(3) put Stennerson "on notice that his conduct was criminal." *Purdy*, 264 at 811. Section 922(g)(3) provides "It shall be unlawful for any person…who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))…to…possess in or affecting commerce, any firearm…" 18 U.S.C. § 922(g)(3). In *Ocegueda,* the Ninth Circuit

stated the term "unlawful user" is "a common sense meaning of the phrase" that included Ocegueda's conduct because his heroin use was consistent, "prolonged," and contemporaneous with his firearms purchases. 564 F.2d at 1365-66. In *Purdy,* the Court emphasized that the government must prove the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase of possession of a firearm. 264 F.3d at 813.

In this case, the evidence that would be presented at trial would stem from not only his pending state criminal charge, but also his admissions to law enforcement following his arrest.[4] Stennerson's pending felony charge of criminal possession of dangerous drugs stemmed from an incident in 2018 where he possessed methamphetamine. *See* Gov't Ex. B. In the present case, a day after he was found in possession of a firearm, Stennerson admitted to being a methamphetamine addict that used a "shot of" methamphetamine every day. *See* Gov't Ex. A. Not only was there contemporaneous and consistent use, but there was also prolonged use as evident by the 2018 possession charge. His regular, prolonged, and contemporaneous drug use was sufficient to put him on notice that

---

4 Both of the as-applied challenges in *Purdy* and *Ocegunda* occurred post-trial, after the government presented evidence that each was an "unlawful user." At this juncture in the proceedings, the government has yet to present any evidence to the trier of fact for Stennerson to argue was insufficient to put him on notice he was an "unlawful user." As such, Stennerson's as-applied challenge is premature.

28

he fell within the statutory definition of "unlawful drug user."

Defendant relies on a recent District of Utah case – *United States v. Morales-Lopez*, 2022 WL 2355920 – to support his facial challenge that § 922(g)(3) is unconstitutionally vague.[5] However, *Morales-Lopez* at *2-*7 makes clear it is arguing for a different standard for a facial challenge than what the Ninth Circuit applies outside the First Amendment.

Section 922(g)(3), as interpreted by the federal courts, is not vague. The Ninth Circuit agrees that the statute requires regular and habitual use at the time of the gun possession. And any uncertainty about the statute's application to a hypothetical defendant's conduct in a marginal case does not render the statute unconstitutionally vague on its face.

## CONCLUSION

*Heller* and *Bruen* are clear that the Second Amendment protects possession and use of firearms for lawful purposes by law-abiding citizens. The Constitution does not protect the conduct §§ 922(g)(3) or 922(n) prohibits.   Moreover, even if such conduct were covered, this statute is consistent with the nation's historical tradition of firearm regulation.   Section 922(g)(3) is facially constitutional, and

---

[5] *United States v. Morales-Lopez* is currently on appeal to the Tenth Circuit Court of Appeals. *See* CA 22-4074.

29

Stennerson's motion to dismiss should be denied.

DATED this 10th day of January, 2023.

JESSE A. LASLOVICH
United States Attorney


*/s/ Julie R. Paten*
JULIE R. PATTEN
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached response

contains 6,049 words, excluding the caption and certificate of compliance.

JESSE A. LASLOVICH
United States Attorney


*/s/ Julie R. Patten*
JULIE R. PATTEN
Assistant U.S. Attorney

31

CERTIFICATE OF SERVICE

L.R. 5.2(b)

* * *

I hereby certify that on January 10, 2023, a copy of the foregoing document

and exhibit were served on the following persons by the following means:

  1, 2    CM/ECF

_____    Hand Delivery

_____    Mail

_____    Overnight Delivery Service

_____    Fax

_____    E-Mail


1.    Clerk, U.S. District Court

2.    Edward Werner
      Federal Defenders of Montana
      Attorney for Defendant


                                   /s/ Julie R. Patten
                                   JULIE R. PATTEN
                                   Assistant U.S. Attorney


32

Exhibit B

FILED

August 17, 2020
Terry Halpin
CLERK
Yellowstone County District Court
STATE OF MONTANA
By Abrahams, Angela
DC-56-2020-0001067-IN
Judge Mary Jane Knisely
# 1.00

Jacob Yerger
**DEPUTY YELLOWSTONE COUNTY ATTORNEY**
P.O. Box 35025
Room 701, Courthouse
Billings, Montana 59107-5025
Telephone:  406/256-2870
Attorney For Plaintiff


# MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

| | |
|---|---|
| STATE OF MONTANA,<br>                              Plaintiff,<br><br>        vs.<br><br>JAREN MICHAEL STENNERSON,<br>                              Defendant. | CAUSE NO.  DC<br><br>JUDGE: MICHAEL G. MOSES<br><br>**MOTION FOR LEAVE TO FILE INFORMATION WITH SUPPORTING AFFIDAVIT** |

The undersigned Deputy County Attorney of Yellowstone County, Montana, being first duly sworn upon his oath, moves the Court for Leave to File an Information based upon an investigation conducted by law enforcement officers charging the above-named Defendant with the offenses of:

**COUNT I: CRIMINAL POSSESSION OF DANGEROUS DRUGS (FELONY)**
**COUNT II: CRIMINAL POSSESSION OF DANGEROUS DRUGS (FELONY)**

committed at Yellowstone County, State of Montana, on or about February 12, 2018.

That law enforcement officers have made a full and careful investigation of all the facts and circumstances surrounding the commission of said offense, so far as they are known or ascertainable; that he believes it a proper case for filing of an Information and that for this reason, and none other, the foregoing motion is made.

The Court is informed that the Billings Police Department (BPD)/CCSIU/EMHIDTA investigation revealed the following:

On or about February 12, 2018, YCSO Deputy Gillen was conducting a uniformed patrol in a marked patrol vehicle on Old Hardin Road in Yellowstone County, Montana.  While traveling west on Old Hardin

Road, Deputy Gillen observed a dark-colored sedan coming toward him in the eastbound lane which appeared to be traveling faster than the posted speed limit of 35 miles per hour.  Deputy Gillen used his radar gun to calculate the vehicle's speed 43 miles per hour.  He turned around and began following the vehicle.

Deputy Gillen observed that the driver of the vehicle appeared to be attempting to evade him, reaching speeds of approximately 50 miles per hour as he drew closer.  The vehicle abruptly turned into the Emerald Hills Trailer Court at 3455 Old Hardin Road.  Deputy Gillen could see a person making furtive movements inside the vehicle as it appeared to be coming to a rolling stop.  Suddenly, he observed a male emerge from the front passenger.  The male began running northbound away from the still-moving vehicle.  Deputy Gillen observed that the male appeared to have crawled over the center console from the driver's side, almost catching his trench coat on the door of the vehicle as he turned to run away.

Deputy Gillen did not pursue the male, choosing to stay on scene and wait for a cover officer.  Approximately one minute later, Deputy Gillen saw the same male walking back toward the vehicle, this time without the trench coat.  Deputy Gillen detained the male, whom he identified as JAREN MICHAEL STENNERSON (born January of 1985), the Defendant herein.  The Defendant apologized to Deputy Gillen for his driving.

Deputy Gillen could see that the Defendant was sweating profusely, despite an outdoor temperature of approximately -2 degrees.  The Defendant's movements were quick and jerky, and his speech was animated.  Deputy Gillen transported the Defendant to the Yellowstone County Detention Facility (YCDF), to investigate whether or not the Defendant was driving under the influence.  The Defendant was remanded to the custody of the detention facility at the conclusion of Deputy Gillen's investigation.

YCSO Detective Moffett applied for and obtained a search warrant for the vehicle.  Inside, he found a small bag containing a white crystalline substance and two white tablets.  The substance inside the bag field-tested positive as methamphetamine and was forwarded to the Montana State Crime Laboratory along with the tablets.  Chemical analysis confirmed that the substance inside the bag was methamphetamine, a Schedule II dangerous drug.  The tablets were confirmed to be morphine, a Schedule II dangerous drug.

The investigation continues.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  August 17, 2020

/s/ Jacob A. Yerger
Deputy County Attorney

Exhibit B

F I L E D
August 29, 2019
Terry Halpin
CLERK
Yellowstone County District Court
STATE OF MONTANA
By: Abrahams, Angela
DC-56-2019-0001061-IN
Judge Jessica Fehr
# 1.00

Brett D. Linneweber
**DEPUTY YELLOWSTONE COUNTY ATTORNEY**
P.O. Box 35025
Room 701, Courthouse
Billings, Montana 59107-5025
Telephone:  406/256-2870
Attorney For Plaintiff

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

| | |
|---|---|
| STATE OF MONTANA,<br>                    Plaintiff,<br><br>           vs.<br><br>JAREN MICHAEL STENNERSON,<br>                    Defendant. | CAUSE NO.  DC<br><br>JUDGE: MICHAEL G. MOSES<br><br>**MOTION FOR LEAVE TO FILE INFORMATION WITH SUPPORTING AFFIDAVIT** |

The undersigned Deputy County Attorney of Yellowstone County, Montana, being first duly sworn upon his oath, moves the Court for Leave to File an Information based upon an investigation conducted by law enforcement officers charging the above-named Defendant with the offenses of:

**COUNT I: CRIMINAL POSSESSION OF DANGEROUS DRUGS (FELONY)**
**COUNT II: CRIMINAL POSSESSION OF DRUG PARAPHERNALIA (MISDEMEANOR)**
**COUNT III: CRIMINAL POSSESSION OF DANGEROUS DRUGS (MISDEMEANOR)**

committed at Yellowstone County, State of Montana, on or about August 24, 2019.

That law enforcement officers have made a full and careful investigation of all the facts and circumstances surrounding the commission of said offense, so far as they are known or ascertainable; that he believes it a proper case for filing of an Information and that for this reason, and none other, the foregoing motion is made.

The Court is informed that the Yellowstone County Sheriff's Office (YCSO) investigation revealed the following:

ER_59

On August 24, 2019 at approximately 0637 hours, Deputy Zidak arrested the Defendant on outstanding warrants. Deputy Zidak conducted a pat search prior to placing him into the backseat of the patrol vehicle.

Deputy Zidak asked the Defendant if he had anything on his person that would harm him. The Defendant stated he had two syringes in his left cargo pocket. The Defendant stated he had the syringes because he is a meth addict. The Defendant also stated he had a small amount of methamphetamine in a plastic straw located in his left front pocket. When the Defendant was searched at booking, YCDF Officer Olsen located a red plastic straw in his left front pocket, two capped syringes in his right cargo pocket and a small glass container that had a clear yellowish waxy substance from his right cargo pocket.

The substance in the red straw was a white crystalline substance which tested positive for methamphetamine using a Narcotic Testing Kit (NIK) (total weight of substance and straw .40 grams). The substance in the small glass container tested positive for marijuana using a Narcotics Testing Kit (NIK). The syringes appeared unused and contained no visible substance.

The investigation continues.

Brett D. Linneweber
Deputy County Attorney
Yellowstone County, Montana

This instrument was signed and sworn to before me on August 28, 2019 by Brett D. Linneweber.

Chandler Aus

CHANDLER AUS
NOTARY PUBLIC for the
State of Montana
Residing at Shepherd, Montana
My Commission Expires
June 19, 2022

GILLIAN E. GOSCH
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
2702 Montana Avenue, Suite 101
Billings, MT 59101-2372
gillian_gosch@fd.org
Phone:  (406) 259-2459
Fax:  (406) 259-2569
        Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAREN MICHAEL STENNERSON,<br><br>Defendant. | **Case. No. CR-22-139-BLG-SPW**<br><br><br>**BRIEF IN SUPPORT OF<br>MOTION TO DISMISS** |

Defendant Jaren Michael Stennerson moves to dismiss Count 1 and Count 2 of his indictment pursuant to Fed. R. Crim. P. 12(b)(1).  Stennerson files this brief in support of the motion.

### Summary of the Argument

Rule 12(b)(1) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."

1

Dismissal is the appropriate remedy due to the unconstitutionality of 18 U.S.C. § 922(n) and 18 U.S.C. § 922(g)(3). 18 U.S.C. § 922(g)(3) prohibits any person "who is an unlawful user of or addicted to any controlled substance" from possessing a firearm. 18 U.S.C. § 922(n) provides that it is "unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

In light of the new analytical framework established by *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), Section 922(n) and Section 922(g)(3) violate the Second Amendment.  Under *Bruen*'s framework, because Section 922(n) and Section 922(g)(3) cover conduct that falls under the Second Amendment, the Government bears the burden of showing that Section 922(n) and Section 922(g)(3) are consistent with the nation's historical tradition of firearm regulation, which it cannot do. Because the Government cannot make this showing, Section 922(n) and Section 922(g)(3) impermissibly infringe upon Stennerson's Second Amendment rights.  Additionally, Section 922(g)(3) violates the Fifth Amendment's Due Process Clause because it is unconstitutionally vague on its face and as applied to Stennerson.  The Court should dismiss Counts 1 and 2

2

of Stennerson's indictment because Section 922(n) and Section 922(g)(3) cannot pass constitutional muster.

**Facts**

On February 11, 2019, Jaren Michael Stennerson was charged in Montana state court with Burglary, a felony.  On August 30, 2019, Stennerson was charged in Montana state court with Criminal Possession of Dangerous Drugs, a felony.  In August of 2020, Stennerson was charged in Montana state court with two counts of Felony Criminal Possession of Dangerous Drugs.  As part of Stennerson's release conditions, issued on August 27, 2019, he may not possess a firearm, destructive device, or other dangerous weapon.

On March 30, 2022, while the felony state charges were pending, Stennerson was detained, and officers conducted a Terry search of his person.  Officers seized a firearm, a CZ 9mm, from Stennerson's person and arrested Stennerson for possession of stolen property upon discovering that the firearm was reported stolen on March 30, 2021.  Officers also seized a metal object that potentially obtained explosive material located in Stennerson's backpack.  Stennerson was later charged in Montana state court with Possession of Destructive Devices.

On November 18, 2022, Stennerson was federally charged with and indicted on two counts: Count 1: Violation of 18 U.S.C. 922(g)(3) — Unlawful Drug User in

Possession of a Firearm and Count 2: Violation of 18 U.S.C. § 922(n) — Illegal Receipt of a Firearm by a Person under Indictment.

**Argument**

I.    **In light of the Supreme Court's decision in *Bruen*, because Section 922(n) and Section 922(g)(3) are not rooted in the Second Amendment's text or history, both are unconstitutional.**

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court clarified the analytical framework courts should employ in scrutinizing firearm regulation. 142 S. Ct. 2111, 2127 (2022).  The Court adopted a single step test, which required the government to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.*  The Court reasoned that consistent with *Heller*, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government … must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. Only after the government makes this showing may a court find that a firearm regulation is individual conduct falling outside of the Second Amendment's

4

protections. *Id.*  In other words, "[b]ecause the Second Amendment was adopted in 1791, only those regulations that would have been considered constitutional then can be constitutional now." *United States v. Butts*, 2022 WL 16553037, at *2 (D. Mont. Oct. 31, 2022) (quoting *United States v. Price*, 2022 WL 6968457, at *1 (S.D.W.V. Oct. 12, 2022)).

**A. Under *Bruen*, the Second Amendment's text covers conduct under both Section 922(n) and Section 922(g)(3) and thus, both are presumptively unconstitutional.**

Under *Bruen*'s new framework, a court must first determine whether the Second Amendment's text covers an individual's conduct. *Bruen*, 142 S. Ct. at 2129-30.  The Second Amendment text "guarantee[s] the individual right to possess and carry weapons in case of confrontation" that does not depend upon service in the militia. *Id.* at 2127 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)).

Mr. Stennerson's conduct in possessing a firearm under Section 922(g)(3) is protected under the Second Amendment's guarantee. *See Bruen*, 142 S. Ct. at 2130. Additionally, the Second Amendment covers conduct of "receipt" under Section 922(n). *See, e.g.*, United States v. Quiroz, 2022 WL 4352482, at *4 (W.D. Tex. Sept. 19, 2022) (finding that "to keep and bear arms" encompasses receipt of a firearm). Because the conduct at issue under Section 922(n) and Section 922(g)(3) is covered

by the Second Amendment's text, the statutes are presumptively unconstitutional. *See Bruen*, 142 S. Ct. at 2129-30.  Thus, when the Second Amendment's plain text covers the conduct at issue, the burden shifts to the Government to "justice its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

**B.** **The Government cannot meet its burden of establishing that as of 1791,[1] there was a tradition of prohibiting individuals under indictment nor users of intoxicants from possessing firearms.**

To justify Section 922(n) and Section 922(g)(3)'s restrictions on firearm possession, the Government must demonstrate that these modern regulations are consistent with the Nation's historical firearm regulation. *Bruen*, 142 S. Ct. at 2131. If a "challenged regulation addresses a general social problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* When faced with "modern regulations that were unimaginable at the founding," these regulations may require a "more nuanced" approach looking at historical analogies "relatively similar" to modern regulation. *Id.* at 2132.

---

[1] *See Bruen*, 142 S. Ct. at 2163 (Barrett, J., concurring) (asserting that 1791, when the Bill of Rights was ratified, is the correct date for assessing the scope of permissible federal regulation of an individual right).

For both Section 922(n) and Section 922(g)(3), the Government must provide historical examples of regulations that are "distinctly similar" to both sections because the restrictions do not address "unprecedented social concerns or dramatic technological changes." *Bruen*, 142 S. Ct. at 2132-33. Section 922(n) creates a complete ban on firearm receipt, based upon indictment, which is a process older than and explicitly discussed in the Fifth Amendment. *See* U.S. Const. amend. V. Section 922(g)(3) addresses firearm violence by intoxicated individuals—a problem that existed in 1791.

**C. The Government cannot meet its burden to establish that there are "distinctly similar historical regulations" in this Nation's history that support firearm restrictions for individuals under indictment or for users of intoxicants.**

The history of barring indicted individuals from receiving firearms started in 1938 with the passage of the Federal Firearms Act ("FFA"). *See United States v. Quiroz*, 2022 WL 4352482, at *4 (W.D. Tex. Sept. 19, 2022) (discussing Section 922(n)'s history stemming from the Federal Firearms Act passed in 1938). Congress amended the FFA in 1961 to cover all individuals under felony indictment and expanded gun regulations under the Gun Control Act of 1968 ("GCA") to cover indictments at the state and federal levels. *Id.* at *4-5. The lack of "distinctly similar historical regulation" restricting firearm receipt for individuals under indictment,

7

particularly prior to the twentieth century, demonstrates that Section 922(n) is inconsistent with the Second Amendment.[2] *See Bruen*, 142 S. Ct. at 2131.

The Government faces a similar problem with Section 922(g)(3). Section 922(g)(3) is also an enactment arising from part of the Gun Control Act of 1968. Pub. Law 90-618. The recent nature to this statute and the lack of a distinctly similar historical regulation prohibiting users of intoxicants from possessing firearms demonstrates that Section 922(g)(3) is inconsistent with the Second Amendment. *See Bruen*, 142 S. Ct. at 2131.

Even if Section 922(n) and Section 922(g)(3) were considered uniquely modern regulations, there is limited support for restricting firearms for individuals under indictment or for users of intoxicants based upon similar historical analogues. The *Heller* Court considered "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms" as presumptively lawful regulations. *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *see*

---

[2] The Government cannot rely upon the passage of Section 922 to establish a long-standing historical tradition of prohibiting firearm possession by individuals under indictment. *See Bruen*, 142 S. Ct. at 2136-37. The Supreme Court in *Bruen* specifically rejected considering any twentieth century evidence as it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.* at 2154 n.28.

8

*also McDonald,* 561 U.S. at 786 (holding that felon dispossession laws remained valid).   These examples comport with the historical principle of disarming select groups for the sake of public safety, but the Government may only prove Section 922(n) and Section 922(g)(3)'s consistency with this historical tradition if the public safety regulations are "relatively similar." *See Bruen*, 142 S. Ct. at 2132-33.   A court can determine if the regulations are "relatively similar" by looking at how and why the regulations burden the Second Amendment right. *Id.*

The Government cannot rely upon these general public safety justifications to uphold either Section 922(n) or Section 922(g)(3). *See Bruen*, 142 S. Ct. at 2126 (explaining that the "government may not simply posit that the regulation promotes an important interest").   Further, Section 922(n) and Section 922(g)(3) do not pose the same inherent threat to public safety as the examples laid out in *Heller*.   Section 922(n) is not limited to individuals under indictment for violent offenses and it does not require an individual determination as to dangerousness.   Section 922(g)(3) only prohibits "unlawful users" of a controlled substance from possessing firearms and does not require that the user be under the influence of a controlled substance while possessing the firearm.   The lack of limitations imposed on the scope of Section 922(n) and Section 922(g)(3) creates greater individual burdens imposed upon individuals than those burdens imposed by the general public safety regulations laid out in *Heller*.

Further, Stennerson qualifies as part of "the people" entitled to Second Amendment protections. The Second Amendment's text does not give any indication that suggests drug users are not among "the people" entitled to the Amendment's protection. *Bruen*'s holding remained consistent with *Heller* and *McDonald* by repeatedly using the term "law-abiding citizen" to qualify who could exercise individual Second Amendment rights. *See United States v. Butts*, 2022 WL 16553037, at *2 (D. Mont. Oct. 31, 2022) (citing multiple examples of the use of the term "law-abiding citizen" throughout the *Bruen* opinion). Courts have routinely found that individuals under indictment are "law-abiding citizens." *See, e.g.*, *United States v. Laurent*, 861 F. Supp. 71, 102 (E.D.N.Y. 2011) ("a defendant under indictment is a 'law-abiding citizen' who remains eligible for Second Amendment protection.'"); *United States v. Love*, 2021 WL 5758940, at *3 (E.D. Mich. Dec. 3, 2021) ("The purchase of a firearm by a presumably innocent individual falls within the Second Amendment right as historically understood."). Thus, Stennerson qualifies as a "law-abiding citizen" and *Heller*'s endorsement of felon-in-possession laws as constitutional has little bearing on the constitutionality of Section 922(n).[3]

---

[3] *See also United States v. Quiroz*, 2022 WL 4352482, at *10 (W.D. Tex. Sept. 19, 2022) (explaining that while the Nation does have a history of excluding specific groups, such as felons, from exercising certain rights reserved to "the people," there is little historical evidence supporting the exclusion of those under indictment).

Because the Government cannot show that Section 922(n) is consistent with the Nation's historical tradition of firearm regulation, *Bruen*'s analytical framework renders Section 922(n) violative of the Second Amendment.   Further, because Section 922(g)(3)'s prohibition is not analogous to any founding period restrictions, the lack of a "distinctly similar historical regulation" would indicate that Section 922(g)(3) is unconstitutional because it is inconsistent with the Second Amendment. *See Bruen*, 142 S. Ct. at 2131.

## II.   Section 922(g)(3)'s prohibition on gun possession by anyone who is "an unlawful user of or addicted to any controlled substance" is unconstitutionally vague.

Mr. Stennerson maintains that Section 922(g)(3) is unconstitutionally vague on its face and as applied because it fails to properly notify ordinary people of what conduct constitutes a violation.   Specifically, Section 922(g)(3) fails to define "unlawful user" nor gives notice of a temporal requirement between unlawful drug use and gun possession. Section 922(g)(3) undermines separation of powers principles because it invites the judiciary to perform legislative functions in defining a criminal offense.

The Fifth Amendment provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.   The Government violates the Fifth Amendment's Due Process Clause when it takes away

someone's life, liberty, or property under vague criminal statutes that fail to "give ordinary people fair notice of the conduct it punishes, or [are] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 598 (2015). Vague laws also undermine the careful balance struck by the separation of powers between the branches. *See United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). "Only the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *Id.* (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)).

Mr. Stennerson can maintain a facial challenge to Section 922(g)(3) because the statute implicates a fundamental right. The Second Amendment is "among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010). Thus, a statute that implicates an individual's Second Amendment right to keep and bear arms is subject to facial challenges. To hold otherwise would risk treating the Second Amendment as a "second class right." *McDonald*, 561 U.S. at 780. Further, the Supreme Court in *Johnson v. United States* rejected the notion that a statute is facially void "only if it is vague in all its applications." 576 U.S. 591, 603 (2015).

Mr. Stennerson urges this Court to follow *Morales-Lopez*'s opinion holding "[Section 922(g)(3) is unconstitutionally vague both because it fails to give ordinary people fair notice of what conduct it prohibits and because it invites courts, rather than the legislature, to decide what constitutes a crime." *Morales-Lopez*, 2022 WL

2355920, at *8 (D. Utah, June 30, 2022). The *Morales-Lopez* court explained that Section 922(g)(3) fails to give notice to the conduct it prohibits by failing to define both "user" and provide a temporal proximity requirement. *Id.* at *8-9. The *Morales-Lopez* court explained that "unlawful user" fell between something more than a single use but was less than the alternative category of "addict." *Id.* at *8 (discussing that "unlawful user" is less than "ongoing, frequent, habitual use," and does not need to be someone "who is presently under the influence of drugs"). The court further noted that Section 922(g)(3) was unconstitutionally vague "[b]ecause the term 'user' does not connote regular and ongoing use, it would be unclear to the ordinary person at what point he or she, after unlawfully using a controlled substance, may lawfully possess a firearm." *Id.* at *9. The lack of a temporal proximity requirement and the failure to clarify what specific conduct falls within Section 922(g)(3)'s scope makes the statute unconstitutionally vague.

To combat the uncertainty within Section 922(g)(3), courts have added a temporal element to the statute. *See United States v. Espinoza-Roque*, 26 F.4th 32, 35 (1st Cir. 2022) ("[T]he temporal limitation is necessary 'to avoid unconstitutional vagueness' in the statutory definition."). As discussed by the *Morales-Lopez* court, "judicial efforts to add an element to the statute illustrate the way in which § 922(g)(3) runs afoul of separation-of-power principles." *Morales-Lopez*, 2022 WL 2355920, at *10. Court creations of temporal requirements served as an example of

13

"the legislature casting an overly broad net and leaving the judiciary to determine who stays in the net and who does not." *Id.* The variability in circuit decisions defining a temporal requirement in Section 922(g)(3) makes it difficult to determine whether this variability "align[s] with the prohibitions Congress intended to enact." *Id.* at *9 (discussing that circuit decisions have failed to provide parameters to what qualifies as "'regular,' 'consistent,' 'prolonged,' 'habitual,' or 'contemporaneous.'"). The inability to determine what specific conduct is prohibited under Section 922(g)(3) makes the statute void for vagueness. *See id.* at *11 (discussing that only when courts have impermissibly imposed a temporal nexus requirement does Section 922(g)(3) possess an identifiable specific type of conduct). Because the term "user" is open-ended and there is no explicit statutory temporal requirement, an ordinary citizen would not know when his or her conduct in using a controlled substance may result in the forfeiture of his or her Second Amendment rights.

Not only is Section 922(g)(3) vague on its face, but the statute is also vague as applied to Mr. Stennerson. No controlled substance was recovered from Mr. Stennerson's person when police seized the CZ 9mm firearm on March 30, 2022. No evidence was obtained indicating that Mr. Stennerson was on a controlled substance the night of March 30, 2022. The only evidence that Mr. Stennerson is an "unlawful user" consisted of his pending state felony drug possession charges. The

14

facts of this case are markedly different from others where as-applied challenges were rejected. *See, e.g.,* U*nited States v. Cook,* 970 F.3d 866, 877-78 (7th Cir. 2020) (rejecting as applied challenge where defendant had been using for ten years, had smoked two blunts on the day of his arrest, and his person and car smelled of marijuana when he was stopped and found holding a firearm); *United States v. Bramer*, 832 F.3d 908, 909-10 (8th Cir. 2016) (rejecting as applied challenge when defendant was found using marijuana while possessing a firearm); *United States v. Hasson*, 26 F.4th 610, 616-17 (4th Cir. 2022) (rejecting as applied challenge where defendant tested positive for opioids and had amassed numerous weapons).

**CONCLUSION**

Because Section 922(n) and Section 922(g)(3) unconstitutionally infringe upon Stennerson's rights to keep and bear arms under the Second Amendment and because Section 922(g)(3) is impermissibly vague on its face and as applied to Stennerson in violation of the Due Process Clause of the Fifth Amendment, dismissal of both Count 1 and Count 2 in Stennerson's indictment is the appropriate remedy.

Stennerson respectfully requests the Court to set a hearing in this matter if the Court deems it appropriate.

/ / /

/ / /

15

RESPECTFULLY SUBMITTED this 28th day of December, 2022.

/s/ Gillian E. Gosch
GILLIAN E. GOSCH
Federal Defenders of Montana
    Counsel for Defendant

16

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Memorandum in Support of Defendant's Rule 15(a) Motion For Deposition of Witness For Preservation at Trial is in compliance with Local Rule 12.1(e)  The Brief's line spacing is double spaced.  The brief is proportionately spaced, the body of the argument has a Times New Roman typeface, 14 point size and contains 3,265 words, excluding tables and certificates.

DATED this 28th day of December, 2022.

/s/ Gillian E. Gosch
GILLIAN E. GOSCH
Federal Defenders of Montana
Counsel for Defendant

ER_77

GILLIAN E. GOSCH
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
2702 Montana Avenue, Suite 101
Billings, MT 59101-2372
gillian_gosch@fd.org
Phone:  (406) 259-2459
Fax:  (406) 259-2569
          Attorney for Defendant

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. CR-22-139-BLG-SPW** |
| Plaintiff, | |
| vs. | **MOTION TO DISMISS INDICTMENT** |
| JAREN MICHAEL STENNERSON, | |
| Defendant. | |

Defendant Jaren Michael Stennerson moves to dismiss Count I and Count II

of the indictment pursuant to Fed. R. Crim. P. 12(b)(1).  A brief in support is filed

in conjunction with this motion.

Assistant United States Attorney Julie R. Patten has advised defense counsel that she objects to the relief requested in this motion.

RESPECTFULLY SUBMITTED this 28th day of December, 2022

/s/ Gillian E. Gosch
GILLIAN E. GOSCH
Federal Defenders of Montana
        Counsel for Defendant

ER_79

**JULIE R. PATTEN**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**James F. Battin U.S. Courthouse**
**2601 Second Ave. North, Suite 3200**
**Billings, MT 59101**
**Phone:  (406) 657-6101**
**FAX:  (406) 657-6989**
**E-mail:  julia.patten@usdoj.gov**



FILED

NOV 1 8 2022

Clerk, U S District Court
District Of Montana
Billings

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**JAREN MICHAEL STENNERSON,**<br><br>Defendant. | CR 22-139-BLG-SPW<br><br>**INDICTMENT**<br><br>**PROHIBITED PERSON IN POSSESSION OF A FIREARM**<br>Title 18 U.S.C. § 922(g)(3) (Count 1)<br>(Penalty: Ten years of imprisonment, $250,000 fine, and three years of supervised release)<br><br>**RECEIPT OF FIREARM BY PERSON UNDER INDICTMENT FOR FELONY**<br>Title 18 U.S.C. § 922(n) (Count 2)<br>(Penalty: Five years of imprisonment, $250,000 fine, and three years of supervised release)<br><br>**CRIMINAL FORFEITURE**<br>Title 18 U.S.C. § 924(d) |

THE GRAND JURY CHARGES:

## COUNT 1

That on or about March 30, 2022, at Billings, in Yellowstone County, in the State and District of Montana, the defendant, JAREN MICHAEL STENNERSON, an unlawful user of any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), knowingly possessed, in and affecting interstate and foreign commerce, a firearm, in violation of 18 U.S.C. § 922(g)(3).

## COUNT 2

That on or about March 30, 2022, at Billings, in Yellowstone County, in the State and District of Montana, the defendant, JAREN MICHAEL STENNERSON, knowing he was under indictment for a crime punishable by imprisonment for a term exceeding one year under the laws of the State of Montana, willingly received, in and affecting interstate and foreign commerce, a firearm, in violation of 18 U.S.C. § 922(n).

//

//

//

//

//

//

2

FORFEITURE ALLEGATION

Upon conviction of any of the offenses set forth in this indictment, the

defendant, JAREN MICHAEL STENNERSON, shall forfeit, pursuant to 18 U.S.C.

§ 924(d), any firearms and ammunition involved in any knowing violation of said

offense.

A TRUE BILL.

Foreperson signature redacted.
Original document filed under seal.
FOREPERSON

_____
JESSE A. LASLOVICH
United States Attorney

_____
CYNDEE L. PETERSON
Criminal Chief Assistant U.S. Attorney

3

ER_82

GILLIAN E. GOSCH
Assistant Federal Defender
Federal Defenders of Montana
175 N. 27th Street, Suite 401
Billings, Montana 59101
Phone: (406) 259-2459
Fax: (406) 259-2569
gillian_gosch@fd.org
          Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. CR-22-139-BLG-SPW** |
| Plaintiff, | |
| vs. | **NOTICE OF APPEAL** |
| JAREN MICHAEL STENNERSON, | |
| Defendant. | |

NOTICE IS HEREBY GIVEN that Defendant JAREN MICHAEL STENNERSON, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Court's Order Denying Defendant's Motion to Dismiss Indictment filed and entered on February 24, 2023. (Doc. 26). This Appeal is from this order only.

RESPECTFULLY SUBMITTED 12th day of July, 2023.

/s/ Gillian E. Gosch
GILLIAN E. GOSCH
Federal Defenders of Montana
Counsel for Defendant

**CERTIFICATE OF SERVICE**
**L.R. 5.2(b)**

I hereby certify that on July 12, 2023, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM-ECF |
| _____ | Hand Delivery |
| 3 | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. CLERK, UNITED STATES DISTRICT COURT

2. JULIE R. PATTEN
   Assistant United States Attorney
   United States Attorney's Office
   2601 2nd Avenue North
   Billings, MT 59101
        Counsel for the United States

3. JAREN MICHAEL STENNERSON
     Defendant

/s/ Gillian E. Gosch
GILLIAN E. GOSCH
Federal Defenders of Montana
Counsel for Defendant

Query    **Reports**    **Utilities**    Help    Log Out

APPEAL

# U.S. District Court
# District of Montana (Billings)
# CRIMINAL DOCKET FOR CASE #: 1:22-cr-00139-SPW-1

Case title: USA v. Stennerson

Date Filed: 11/18/2022

Date Terminated: 07/12/2023

---

Assigned to: Judge Susan P. Watters

Appeals court case number: 23-1439 Ninth Circuit

## Defendant (1)

**Jaren Michael Stennerson**
*TERMINATED: 07/12/2023*

represented by   **Gillian E. Gosch**
FEDERAL DEFENDERS OF MONTANA - BILLINGS
2702 Montana Avenue, Suite 101
Billings, MT 59101-2372
406-259-2459
Email: gillian_gosch@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

## Pending Counts

**18:922G.F PROHIBITED PERSON IN POSSESSION OF A FIREARM. FORFEITURE ALLEGATION**
(1)

**18:922N.F RECEIPT OF FIREARM BY PERSON UNDER INDICTMENT FOR FELONY and CRIMINAL FORFEITURE.**

## Disposition

Defendant is SENTENCED ON COUNTS 1 AND 2 IN THE INDICTMENT TO THE CUSTODY OF THE BOP FOR 21 MONTHS ON EACH COUNT TO RUN CONCURRENT. Followed with 3 years supervised release on each count to run concurrent, with standard and special conditions. (Sentence ordered to run concurrent to state court sentences stated in PSR paragraphs 30, 31, 32, 33.) Fine waived and special assessment $200 due immediately.

Defendant is SENTENCED ON COUNTS 1 AND 2 IN THE INDICTMENT TO THE CUSTODY OF THE BOP FOR 21 MONTHS ON EACH COUNT TO RUN

ER_85

|       |  |                                                                                                                                                                                                                                                                                              |
|-------|--|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| (2)   |  | CONCURRENT. Followed with 3 years supervised release on each count to run concurrent, with standard and special conditions. (Sentence ordered to run concurrent to state court sentences stated in PSR paragraphs 30, 31, 32, 33.) Fine waived and special assessment $200 due immediately. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|-----------------------|-----------------|
| None                  |                 |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|----------------|-----------------|
| None           |                 |

---

| **Plaintiff** |               |                                                                                                                                                                                                                                                                              |
|---------------|---------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| USA           | represented by | **Julie R. Patten**<br>U.S. ATTORNEY'S OFFICE - BILLINGS<br>2601 2nd Avenue North, Ste 3200<br>Billings, MT 59101<br>406-657-6101<br>Email: julia.patten@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

| Date Filed | #  | Docket Text                                                                                                                                                                                      |
|------------|----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 11/18/2022 | 1  | SEALED INDICTMENT as to Jaren Michael Stennerson (1) count(s) 1, 2. (EMH) (Entered: 11/18/2022)                                                                                                   |
| 11/18/2022 | 2  | Redacted Indictment as to Jaren Michael Stennerson. (EMH) (Entered: 11/18/2022)                                                                                                                   |
| 11/18/2022 | 3  | Criminal Cover Sheet filed by USA regarding the 1 Indictment (Sealed) as to Jaren Michael Stennerson. (EMH) (Entered: 11/18/2022)                                                                 |
| 11/28/2022 |    | Arrest of Jaren Michael Stennerson (JLE) (Entered: 11/28/2022)                                                                                                                                    |
| 11/28/2022 |    | Set Hearing as to Jaren Michael Stennerson. ARRAIGNMENT set for 11/29/2022 at 09:00 AM in Billings, MT before Magistrate Judge Timothy J. Cavan. (JLE) (Entered: 11/28/2022)                      |

ER_86

| 11/28/2022 | 5 | Arrest Warrant Returned Executed on 11/28/2022 in case as to Jaren Michael Stennerson. (JLE) (Entered: 11/28/2022) |
|---|---|---|
| 11/29/2022 | 6 | MINUTE ENTRY for proceedings held before Magistrate Judge Timothy J. Cavan: Initial Appearance/ Arraignment as to Jaren Michael Stennerson (1) Count 1,2 held on 11/29/2022. Defendant is present, in custody, and appearing with FD Steven Babcock; AUSA Benjamin Hargrove appearing for the government. Defendant acknowledges his true name; is advised of his rights; qualifies and the Court appoints FD Gillian Gosch. Deft has received and reviewed the Indictment with counsel; waives a formal reading and is advised of the maximum penalties possible. NOT GUILTY plea entered by Defendant on Counts 1-2. USA moves for detention. Defendant reserves at this time. Defendant is remanded to the custody of the USMS. The Court orders the government to comply with Rule 5(f). A written order to follow. Hearing commenced at 9:00 AM and concluded at 9:04 AM (Court Reporter FTR Gold) (USPO: Cameron Peters), (Hearing held in Billings-Big Horn Courtroom) (JLE) (Entered: 11/29/2022) |
| 11/29/2022 | 7 | TEXT ORDER as to Jaren Michael Stennerson - Under Criminal Rule 5(f), the government is ordered to comply with its disclosure obligations under *Brady v. Maryland* and related cases as set forth in the attachment to this Order. Failure to do so may result in sanctions. Signed by Magistrate Judge Timothy J. Cavan on 11/29/2022. (JLE) (Entered: 11/29/2022) |
| 11/29/2022 | 8 | CJA 23 Financial Affidavit by Jaren Michael Stennerson (JLE) (Entered: 11/29/2022) |
| 11/29/2022 | 9 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Jaren Michael Stennerson. Gillian E. Gosch for Jaren Michael Stennerson appointed. Reimbursement information: Defendant is not required to reimburse the Court. Signed by Magistrate Judge Timothy J. Cavan on 11/29/2022. (JLE) (Entered: 11/29/2022) |
| 11/29/2022 | 11 | NOTICE OF TRIAL DAYS by USA as to Jaren Michael Stennerson. Number of Trial Days: 2 (Patten, Julie) (Entered: 11/29/2022) |
| 11/29/2022 | 12 | Notice of Discovery Request by Jaren Michael Stennerson (Gosch, Gillian) (Entered: 11/29/2022) |
| 12/01/2022 | 13 | SCHEDULING ORDER as to Jaren Michael Stennerson Discovery due by 12/6/2022. Motions due by 12/20/2022. Motion to Change Plea due by 1/9/2023. Pretrial Conference set for 1/23/2023 at 08:30 AM in Billings, MT before Judge Susan P. Watters. Jury Trial set for 1/23/2023 at 09:00 AM in Billings, MT before Judge Susan P. Watters. Signed by Judge Susan P. Watters on 12/1/2022. (AMC) (Entered: 12/01/2022) |
| 12/02/2022 | 14 | Unopposed MOTION for Detention Hearing by Jaren Michael Stennerson. (Attachments: # 1 Text of Proposed Order) (Gosch, Gillian) (Entered: 12/02/2022) |
| 12/02/2022 | 15 | ORDER granting 14 Motion for Detention Hearing as to Jaren Michael Stennerson (1). Detention Hearing set for 12/6/2022 at 10:00 AM in Billings, MT before Magistrate Judge Timothy J. Cavan. Signed by Magistrate Judge Timothy J. Cavan on 12/2/2022. (JDH) (Entered: 12/02/2022) |
| 12/06/2022 | 16 | MINUTE ENTRY for proceedings held before Magistrate Judge Timothy J. Cavan: Detention Hearing as to Jaren Michael Stennerson held on 12/6/2022. Defendant is present and in custody appearing with FD Gillian Gosch; AUSA Julie Patten appearing on behalf of the govt. The govt continues in it's motion for detention. Witnesses sworn and examined. Arguments heard. The Court finds by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of |

| | | any other person and the community and by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendants appearance as required. Release is denied and deft ordered detained pending further proceedings. Hearing commenced at 10:07 a.m. and concluded at 10:19 a.m. (Court Reporter FTR Gold) (Government Witnesses Sworn and Examined: USPO Cameron Peters), (USPO: Cameron Peters), (Hearing held in Big Horn Courtroom - Billings) (JDH) (Entered: 12/06/2022) |
|---|---|---|
| 12/06/2022 | 17 | ORDER OF DETENTION as to Jaren Michael Stennerson. Signed by Magistrate Judge Timothy J. Cavan on 12/6/2022. (JDH) (Entered: 12/06/2022) |
| 12/19/2022 | 19 | Unopposed MOTION to Continue *Trial and Extend Pretrial Deadlines* by Jaren Michael Stennerson. (Attachments: # 1 Text of Proposed Order) (Gosch, Gillian) (Entered: 12/19/2022) |
| 12/19/2022 | 20 | ORDER RESETTING TRIAL AND PRETRIAL DEADLINES as to Jaren Michael Stennerson. Order GRANTING 19 Unopposed MOTION to Continue *Trial and Extend Pretrial Deadlines* filed by Jaren Michael Stennerson. IT IS HEREBY ORDERED that the Jury Trial set for 1/23/2023 is VACATED and RESET for 3/20/2023 at 09:00 AM in Billings, MT before Judge Susan P. Watters. Pretrial Conference reset for 3/20/2023 at 08:30 AM in Billings, MT before Judge Susan P. Watters. Pretrial Motions due by 1/30/2023. Motion Change of Plea due by 3/6/2023. Signed by Judge Susan P. Watters on 12/19/2022. (EMH) (Entered: 12/19/2022) |
| 12/28/2022 | 21 | MOTION to Dismiss *Indictment - Count I & II* by Jaren Michael Stennerson. (Attachments: # 1 Text of Proposed Order) (Gosch, Gillian) (Entered: 12/28/2022) |
| 12/28/2022 | 22 | BRIEF/MEMORANDUM in Support by Jaren Michael Stennerson re 21 MOTION to Dismiss *Indictment - Count I & II* (Gosch, Gillian) (Entered: 12/28/2022) |
| 01/10/2023 | 23 | RESPONSE to Motion by USA as to Jaren Michael Stennerson re 21 MOTION to Dismiss *Indictment - Count I & II* (Attachments: # 1 Exhibit B) (Patten, Julie) (Entered: 01/10/2023) |
| 01/10/2023 | 24 | NOTICE *of Conventional Filing of Exhibit A* by USA as to Jaren Michael Stennerson re 23 Response to Motion (Patten, Julie) (Entered: 01/10/2023) |
| 01/10/2023 | | Remark as to Jaren Michael Stennerson: Clerk received CD of Exhibit A and uploaded to SPW Chambers secure drive for review. (AMC) (Entered: 01/10/2023) |
| 02/03/2023 | 25 | NOTICE *of Supplemental Authority* by USA as to Jaren Michael Stennerson (Patten, Julie) (Entered: 02/03/2023) |
| 02/24/2023 | 26 | ORDER DENYING 21 Motion to Dismiss Indictment as to Jaren Michael Stennerson (1). Signed by Judge Susan P. Watters on 2/24/2023. (AMC) (Entered: 02/24/2023) |
| 03/03/2023 | 27 | MOTION TO CHANGE PLEA by Jaren Michael Stennerson. (Attachments: # 1 Text of Proposed Order) (Gosch, Gillian) (Entered: 03/03/2023) |
| 03/06/2023 | 28 | Order Setting as to Jaren Michael Stennerson. IT IS HEREBY ORDERED that the trial set for March 20, 2023 is VACATED. IT IS FURTHER ORDERED that a Change of Plea Hearing is set for 3/10/2023 at 09:30 AM in Billings, MT before Judge Susan P. Watters. Plea Agreement due by 3/8/2023. Signed by Judge Susan P. Watters on 3/6/2023. (EMH) (Entered: 03/06/2023) |
| 03/06/2023 | 29 | PLEA AGREEMENT as to Jaren Michael Stennerson (JLE) (Entered: 03/06/2023) |

ER_88

Case: 23-1439, 09/21/2023, DktEntry: 4.1, Page 89 of 91

| 03/06/2023 | 30 | OFFER OF PROOF as to Jaren Michael Stennerson (Patten, Julie) (Entered: 03/06/2023) |
|---|---|---|
| 03/10/2023 | 31 | MINUTE ENTRY for proceedings held before Judge Susan P. Watters: Change of Plea Hearing as to Jaren Michael Stennerson held on 3/10/2023. Defendant is present, in custody appearing with Federal Defender Gillian Gosch; AUSA Julie Patten appearing for Govt. Essence of plea agreement stated. Defendant advised of his rights, administered Oath and states full name. Defendant answers courts usual questions. No medications, drugs or alcohol that affect understanding of todays proceeding. Defendant has reviewed the indictment with his atty and understands the charges. Court reviews charge, defendant advised of the maximum possible penalties and all the rights that are waived by a guilty plea. Plea agreement discussed and reviewed. Plea is voluntary without promises, force or threats. Elements and Offer of Proof read into the record. DEFENDANT PLEADS GUILTY TO COUNTS 1 AND 2 IN THE INDICTMENT, DEFENDANT ADMITS to Forfeiture and explains what he did to make him plead guilty of the charge. Court accepts guilty plea, finding defendant competent, plea is voluntarily made and defendant adjudged guilty. PSR ordered. Sentencing set for 7/12/2023 at 1:30 PM. Defendant remanded to USMS custody. Hearing commenced at 9:30 AM and concluded at 9:58 AM. (Court Reporter K.Marchwick) (Hearing held in Billings- SMC) (EMH) (Entered: 03/10/2023) |
| 03/10/2023 | 32 | ORDER SETTING SENTENCING as to Jaren Michael Stennerson. Sentencing set for 7/12/2023 at 01:30 PM in Billings, MT before Judge Susan P. Watters. Signed by Judge Susan P. Watters on 3/10/2023. (AMC) (Entered: 03/10/2023) |
| 03/10/2023 | 33 | MOTION for Forfeiture of Property *Preliminary Order of Forfeiture* by USA as to Jaren Michael Stennerson. (Attachments: # 1 Text of Proposed Order) (Patten, Julie) (Entered: 03/10/2023) |
| 03/10/2023 | 34 | PRELIMINARY ORDER OF FORFEITURE. GRANTING 33 Motion for Forfeiture of Property as to Jaren Michael Stennerson (1). Signed by Judge Susan P. Watters on 3/10/2023. (AMC) (Entered: 03/10/2023) |
| 04/20/2023 | 35 | AFFIDAVIT/DECLARATION by USA as to Jaren Michael Stennerson 34 Order on Motion for Forfeiture of Property. (Attachments: # 1 Attachment) (Patten, Julie) (Entered: 04/20/2023) |
| 06/09/2023 | 36 | SENTENCING MEMORANDUM by Jaren Michael Stennerson (Gosch, Gillian) (Entered: 06/09/2023) |
| 06/12/2023 | 37 | MOTION for Forfeiture of Property *Final Order of Forfeiture* by USA as to Jaren Michael Stennerson. (Attachments: # 1 Text of Proposed Order) (Patten, Julie) (Entered: 06/12/2023) |
| 06/12/2023 | 38 | FINAL ORDER OF FORFEITURE. GRANTING 37 Motion for Forfeiture of Property as to Jaren Michael Stennerson (1). Signed by Judge Susan P. Watters on 6/12/2023. (AMC) (Entered: 06/12/2023) |
| 06/23/2023 | 39 | SENTENCING MEMORANDUM by USA as to Jaren Michael Stennerson (Patten, Julie) (Entered: 06/23/2023) |
| 07/10/2023 | 40 | NOTICE of Filing Exhibits by Jaren Michael Stennerson (Attachments: # 1 Exhibit Acceptance Letter) (Gosch, Gillian) (Entered: 07/10/2023) |

ER_89

| 07/12/2023 | 41 | MINUTE ENTRY for proceedings held before Judge Susan P. Watters: Sentencing held on 7/12/2023 for Jaren Michael Stennerson (1),Defendant is present, in custody appearing with FD Gillian Gosch; AUSA Colin Rubich appearing on behalf of Julie Patten for Government. Government moves for reduction in sentencing for acceptance of responsibility and timely notification of plea; GRANTED. PSR is adopted as written. Plea agreement accepted. Court summarizes statutory and guideline calculations. Court Orders forfeiture of firearm per final Order of forfeiture previously entered on 6/12/2023. Court hears an impact statement. Sentencing arguments made and defendant makes statement. Court reviews 3553(a) factors. Defendant is SENTENCED ON COUNTS 1 AND 2 IN THE INDICTMENT TO THE CUSTODY OF THE BOP FOR 21 MONTHS ON EACH COUNT TO RUN CONCURRENT. Followed with 3 years supervised release on each count to run concurrent, with standard and special conditions. (Sentence ordered to run concurrent to state court sentences stated in PSR paragraphs 30, 31, 32, 33.) Fine waived and special assessment $200 due immediately. Defendant advised of right to appeal sentence is waived pursuant to the plea agreement and remanded to USMS custody. Hearing commenced at 1:30 PM and concluded at 1:56 PM. (Presentence Report due by 7/19/2023.) (Court Reporter K.Marchwick) (USPO: Z.Schumaker), (Law Clerk: D.Connelley), (Hearing held in Billings- SMC) (EMH) (Entered: 07/12/2023) |
| 07/12/2023 | 42 | JUDGMENT as to Jaren Michael Stennerson (1), Count(s) 1, Defendant is SENTENCED ON COUNTS 1 AND 2 IN THE INDICTMENT TO THE CUSTODY OF THE BOP FOR 21 MONTHS ON EACH COUNT TO RUN CONCURRENT. Followed with 3 years supervised release on each count to run concurrent, with standard and special conditions. (Sentence ordered to run concurrent to state court sentences DC 2019-0162, DC 2019-1061, DC 2020-1067, DC 2022-3059). Fine waived and special assessment $200 due immediately. Signed by Judge Susan P. Watters on 7/12/2023. (EMH) (Entered: 07/12/2023) |
| 07/12/2023 | 43 | STATEMENT OF REASONS as to Jaren Michael Stennerson re 42 Judgment. Signed by Judge Susan P. Watters on 7/12/2023. (sent sealed email to AUSA and fD) (EMH) (Entered: 07/12/2023) |
| 07/12/2023 | 44 | NOTICE OF APPEAL by Jaren Michael Stennerson Filing fee $ 505, receipt number FDOM. (Gosch, Gillian) (Entered: 07/12/2023) |
| 07/12/2023 | 45 | PRESENTENCE INVESTIGATION REPORT (Sealed) as to Jaren Michael Stennerson (copy emailed to FD and AUSA) (EMH) (Entered: 07/12/2023) |
| 07/14/2023 | 46 | USCA Case Number and Time Scheduling Order as to Jaren Michael Stennerson. Case number 23-1439 for 44 Notice of Appeal - Order filed by Jaren Michael Stennerson. (JLE) (Entered: 07/14/2023) |

**PACER Service Center**

**Transaction Receipt**

09/07/2023 15:12:54

| PACER Login: | fdom0341 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:22-cr-00139-SPW |
| Billable Pages: | 6 | Cost: | 0.60 |
| Exempt flag: | Exempt | Exempt reason: | Always |

ER_90

## CERTIFICATE OF SERVICE
## Fed.R.App.P. 25

I hereby certify that on September 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

Jaren Michael Stennerson
Reg. # - 33454-510
U.S.P. Terre Haute
United States Penitentiary
P.O. Box 33
Terre Haute, IN 47808
                    Defendant-Appellant

                                        /s/ Gillian E. Gosch
                                        _____
                                        GILLIAN E. GOSCH
                                        Federal Defenders of Montana
                                            Counsel for Defendant