No. 23-1439

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

―――――――――――

**UNITED STATES OF AMERICA**,
PLAINTIFF-APPELLEE,

V.

**JAREN MICHAEL STENNERSON**
DEFENDANT-APPELLANT.

―――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
D.C. NO. CR-22-139-BLG-SPW

―――――――――――

**SUPPLEMENTAL EXCERPTS OF RECORD**

―――――――――――

JESSE A. LASLOVICH
United States Attorney

TIMOTHY A. TATARKA
Assistant U.S. Attorney
District of Montana
2601 2nd Avenue North
Suite 3200
Billings, MT 59101
Telephone: (406) 657-6101

Attorneys for Appellee

# TABLE OF CONTENTS

Sentencing Transcript (Doc. 51) (7/12/2023)........................... SER-004

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

JESSE A. LASLOVICH
United States Attorney

s/ *Timothy A. Tatarka*
TIMOTHY A. TATARKA
Assistant United States Attorney

```
1   Kim Marchwick
    Registered Professional Reporter
2   Certified Realtime Reporter
    Federal Certified Realtime Reporter
3   2601 2nd Ave. N., Suite 4209
    Billings, Montana 59101
4   (406) 671-2307 cellular
    Marchwickkim@gmail.com
5

6
                IN THE UNITED STATES DISTRICT COURT
7                  FOR THE DISTRICT OF MONTANA
                         BILLINGS DIVISION
8                 _____

9   UNITED STATES OF AMERICA,     )
                                  )
10              Plaintiff,        )
         vs.                      ) Case No:  CR 22-139-BLG-SPW
11                                )
                                  ) Sentencing
12  JAREN MICHAEL STENNERSON,     )
                                  )
13              Defendant.        )
                  _____
14
                   TRANSCRIPT OF PROCEEDINGS
15                 Wednesday, July 12, 2023
                    1:31 p.m. to 1:56 p.m.
16                _____

17

18          BEFORE THE HONORABLE SUSAN P. WATTERS
              UNITED STATES DISTRICT COURT JUDGE
19      FOR THE DISTRICT OF MONTANA - BILLINGS DIVISION

20          James F. Battin Federal Courthouse
                  2601 2nd Avenue North
21                Billings, Montana 59101

22                _____

23

24
           Proceedings recorded by machine shorthand
25       Transcript produced by computer-aided transcription
```

2

1                          **APPEARANCES**

2    For the Plaintiff:

3        Colin Rubich, Assistant United States Attorney
         **U. S. ATTORNEY'S OFFICE - BILLINGS DIVISION**
4        2601 2nd Avenue North, Suite 3200
         Billings, Montana 59101
5        colin.rubich@usdoj.gov

6

7    For the Defendant:

8        Gillian Gosch, Deputy Federal Defender
         **FEDERAL DEFENDERS OF MONTANA - BILLINGS DIVISION**
9        175 N 27th St., Ste 401
         Billings, Montana 59101
10       gillian_gosch@fd.org

11

12                          **CONTENTS**

13                                                        PAGE

14   Proceedings                                            3

15   Certificate of Reporter                               21

16

17

18

19

20

21

22

23

24

25

3

1          MORNING SESSION, WEDNESDAY, JULY 12, 2023

2      (Whereupon, the court convened at 1:31 p.m., with

3   Defendant present and in custody, and the following

4   proceedings were had:)

5          THE CLERK:  All rise.  The United States District

6   Court for the District of Montana is now in session.  The

7   Honorable Susan P. Watters presiding.

8          THE COURT:  Emily, if you would please call the

9   next matter on the calendar.

10          THE CLERK:  Yes, Your Honor.

11          The Court has set aside this time to hear the

12   matter of CR 22-139-BLG-SPW, United States vs.

13   Jaren Michael Stennerson.  This is the time set aside for

14   sentencing.

15          THE COURT:  For the record Colin Rubich appears on

16   behalf of the government.  Gillian Gosch appears on behalf

17   of the defendant, and the defendant is present.  I've

18   received and reviewed the presentence report, the sentencing

19   memoranda filed by counsel, and the defendant's letter of

20   acceptance.

21          Mr. Rubich, did you receive and review the

22   presentence report?

23          MR. RUBICH:  I did, Your Honor.

24          THE COURT:  Do you have any objections to that

25   report?

4

1       MR. RUBICH:  No objections, Your Honor.

2       THE COURT:  Are you recommending the defendant's

3   offense level be decreased by two levels for acceptance of

4   responsibility and moving for an additional one-level

5   decrease for timely notification of plea?

6       MR. RUBICH:  I do so recommend and move, Your

7   Honor.

8       THE COURT:  And those are granted.

9       Ms. Gosch, did you receive and review the

10  presentence report?

11      MS. GOSCH:  Yes, Your Honor.

12      THE COURT:  And did you have an opportunity to

13  review that report in its entirety with Mr. Stennerson?

14      MS. GOSCH:  Yes, Your Honor.

15      THE COURT:  Do you have any objections to that

16  report?

17      MS. GOSCH:  No, Your Honor.

18      THE COURT:  Thank you.

19      I will adopt the presentence report without

20  objection and rely on it for purposes of calculating the

21  advisory sentencing guidelines.  And I will accept the plea

22  agreement that has been filed in this matter.

23      So now I will summarize the applicable punishments

24  for the offenses under both the United States Sentencing

25  Guidelines and the applicable statutes.

5

1    With regard to the guidelines, the counts are

2    grouped together for the guideline determination, the

3    adjusted offense level is 16.  We arrive at that level by

4    beginning with a base offense level of 14 and adding two

5    levels for the reason that the firearm was stolen.

6    And then subtracting three levels for acceptance of

7    responsibility and timely notification of plea, we arrive at

8    a total offense level of 13.  Mr. Stennerson has four

9    criminal history points so his Criminal History Category is

10    III.  The resulting advisory guideline range is 18 to 24

11    months' imprisonment.

12    Under the guidelines, Mr. Stennerson is not

13    eligible for probation.  He is subject to one to three years

14    of supervised release, a fine of 5,500 to $55,000, and a

15    special assessment of $100, and restitution is not

16    applicable under the guidelines.

17    Pursuant to the statute for the charge in Count 1

18    of prohibited person in possession of a firearm in violation

19    of 18 United States Code Section 922(g)(3), the maximum

20    punishment is ten years' imprisonment, the maximum fine is

21    $250,000, no more than three years of supervised release,

22    and a $100 special assessment.

23    In Count 2, for the charge of receipt of a firearm

24    by a person under indictment for a felony in violation of 18

25    United States Code Section 922(n), the maximum punishment is

6

```
1   five years' imprisonment, the maximum fine is $250,000, no
2   more than three years of supervised release, and a $100
3   special assessment.
4          Under the statutes Mr. Stennerson is eligible for
5   probation for a period of one to five years and, again,
6   restitution is not applicable.
7          Mr. Rubich, do you agree that's an accurate
8   statement of the statutory and guideline provisions?
9          MR. RUBICH:  I do, Your Honor.
10         THE COURT:  And do you agree, Ms. Gosch?
11         MS. GOSCH:  Yes, Your Honor.
12         THE COURT:  There was a forfeiture count in the
13  indictment.  A final order of forfeiture was filed on
14  June 12, 2023.  And so the Court has ordered that the
15  firearm and ammunition as set forth on page 2 in paragraph 2
16  of that order will be forfeited to the United States.
17         The firearm is a CZ, model CZ82, 9-millimeter
18  caliber pistol, Serial No. 123915, and then 63 rounds of 9mm
19  caliber ammunition.
20         And it's my understanding that we have an
21  individual in the courtroom here, Mr. Rubich, who was the
22  owner of that firearm; is that your understanding?
23         MR. RUBICH:  That is my understanding, Your Honor.
24         THE COURT:  And so is it the government's intention
25  that the firearm will be returned to him?
```

1          MR. RUBICH:  That would be our normal course, Your

2    Honor.  I wasn't briefed on that particular issue, I will

3    follow up, but that is -- what would be our normal course.

4          THE COURT:  Okay.  I understand you are not the

5    assigned prosecutor --

6          MR. RUBICH:  Yes, Your Honor.

7          THE COURT:  -- to this case.

8          And, sir, I understand that you wanted to make a

9    statement.  You're not technically a victim of these crimes,

10   but I'll allow you to make a brief statement if that's your

11   desire.

12         MR. GROW:  I would like to, Your Honor.

13         THE COURT:  Okay.  Come forward to the podium,

14   please.

15         Could you state your name for the record, please.

16   Could you state your name for the record.

17         MR. GROW:  My name:  Randy Grow, G-r-o-w.

18         THE COURT:  Okay.  Go ahead, Mr. Grow.

19         MR. GROW:  Ready?

20         THE COURT:  Go ahead.

21         MR. GROW:  Okay.  I am the owner of the CZ, Model

22   82, 9 by 18 Makarov that was stolen from me on the evening

23   of 30 March 2001, Billings PD Case No. 21 dash triple two --

24   triple deuce 51.

25         As far as sentencing or anything like that, if I

8

1    have anything to say about it, I would like to see the

2    maximum allowable penalty assessed in this particular case,

3    and I would also ask that my firearm and whatever ammunition

4    or magazines may possibly be in the possession of ATF be

5    returned to me, the legal owner, as soon as possible.

6            THE COURT:  Okay.  And you understand that we have

7    no evidence that this defendant stole your firearm?

8            MR. GROW:  Say, again, ma'am; I'm not hearing you

9    well.

10           THE COURT:  We don't have any evidence that

11   Mr. Stennerson stole the firearm.

12           MR. GROW:  I have no idea if he stole it or not.

13   What I do know is that it was in his possession.

14           THE COURT:  It was a year later, approximately,

15   yes; I'm just making you understand that Mr. Stennerson is

16   not convicted --

17           MR. GROW:  Point taken, point understood.

18           THE COURT:  And we have no evidence that he did

19   steal it; in fact, we have evidence that he bought it from

20   somebody else for a hundred bucks.

21           MR. GROW:  That's immaterial to me; all I know it

22   was in his possession.

23           THE COURT:  I know.  As far as sentencing, though,

24   I'm telling you that.  Okay.  Thank you.

25           MR. GROW:  Will that be all, ma'am?

9

```
1            THE COURT:  It is.  Thank you.

2            MR. GROW:  Thank you.

3            THE COURT:  And, Mr. Rubich, you may be heard as to

4    sentencing.

5            MR. RUBICH:  Thank you, Your Honor.

6            As you're aware from the sentencing memoranda filed

7    in this case, we are asking for 21 months of incarceration.

8    You know, I -- frankly, there is not much that I can say

9    that wouldn't be, to a certain extent, beating a dead horse.

10   This situation is like so many that we see and is in so many

11   ways scary.

12           I mean -- Mr. Stennerson is on release from

13   multiple felony, you know, charges on the state side.  He's

14   carrying a firearm.  By his own admission, he is under the

15   influence of methamphetamine, you know, and when law

16   enforcement shows up, this could have gone really bad, if

17   the facts were slightly different.

18           And this is happening over and over again every day

19   in the community of Billings, and it's had a terrible effect

20   on our community.

21           As to Mr. Stennerson, you know, he has had a lot of

22   challenges in life, but the thing I think I struggle with

23   most is, his criminal history is only Category III, but in

24   many ways that understates where he's at because by my count

25   he has one, two, three, four felonies that he has now been
```

1  convicted of, and now I guess this would be the fifth.

2          Five felonies is a lot of felonies for any person,

3  and that's a lot for Mr. Stennerson.  And when you look at

4  the facts and the charges of Mr. Stennerson's conduct, a

5  pattern that is really kind of scary becomes apparent.

6          So I think it is more than reasonable to ask for 21

7  months of incarceration.  He clearly needs treatment.  He

8  clearly needs some intensive supervision, and I really hope

9  that this is finally the thing that reaches him because this

10  is not going to end well if it doesn't change.

11          Thank you.

12          THE COURT:  Thank you.

13          Ms. Gosch.

14          MS. GOSCH:  Your Honor, I guess what struck me

15  about Mr. Stennerson's criminal history is something that,

16  you know, I was talking to probation department about just a

17  little bit ago, it that it doesn't appear that he started

18  committing violations of the law until 2018, and then we

19  have kind of this really quick succession of violations of

20  the law.

21          And, you know, in talking with Jaren about that, it

22  really seemed to when these offenses started to be committed

23  is really kind of when his substance abuse really, really

24  took off.  He's had a long-standing issue with alcohol, used

25  marijuana; but it really just seems that this is kind of the

11

1     like the pinnacle of when it just went downhill really fast.

2         And then we start seeing him with being charged

3     with being in possession of drugs, and we have the case that

4     he had as a companion to this one where there is a

5     destructive device that's found when he is being patted down

6     at the jail.

7         So I think when the government saying he has a

8     serious substance abuse problem, I think that that's kind of

9     where we're at with why this has happened from 2018 'til

10     now. So we're asking the Court to -- I don't know that

11     he'll be in custody long enough to participate in the RDAP

12     program, but we will ask the Court to recommend that, just

13     in case he is in custody long enough to participate.

14         Certainly, once he's out we will anticipate he will

15     be in treatment with the probation department here. One of

16     the other things that, you know, for me, that stuck out with

17     Jaren, he really hasn't had any employment in his adult life

18     and, you know, he is 40 years old.

19         So I think that vocational training for him would

20     be paramount, because I do think that if he's able to be

21     gainfully employed, he will be able to, you know, have that

22     kind of more positive pride that one has when they have a

23     job that they like and they have work that they can

24     accomplish in a positive manner.

25         So those are the two things that I think for Jaren

1    are most important at this point, and he is requesting that

2    the Court recommend Yankton, South Dakota, for where he

3    would serve his time.

4           THE COURT:  And the reason for that?

5           MS. GOSCH:  Proximity to family, Your Honor.

6           THE COURT:  Mr. Stennerson, do you have anything

7    you wish to say before I impose sentence?

8           THE DEFENDANT:  Um, just that I'm sorry for what I

9    did, and hopefully your consideration on being lenient, that

10    gives me an opportunity to show that I could do better and

11    be better for you.  Thank you.

12           THE COURT:  So it was the subject of some

13    discussion that your criminal history doesn't start until

14    you're 33 years old.  Is it -- what is the explanation for

15    that, is it your drug abuse or what?

16           THE DEFENDANT:  Mainly my drug abuse; been homeless

17    most my life, didn't really have anything to look forward to

18    or anything like that so I haven't really had to worry about

19    too many things except for myself.  Other than an

20    explanation (shrugging of shoulders) there really isn't one;

21    just didn't have anything to look forward to.

22           THE COURT:  So you have these four felonies pending

23    in state court, and I note that you are apparently, at least

24    at the time the presentence was written, set for sentencing

25    on July 25th.  Is that still the case?

13

1       THE DEFENDANT:  Yes.

2       THE COURT:  Well, the question before the Court

3  today is what is a sufficient but not greater than necessary

4  sentence that will accomplish the purposes of sentencing,

5  which include punishment, deterrence, protection of the

6  public, and your rehabilitation.

7       And the sentence needs to reflect the seriousness

8  of the crimes and promote a respect for the law.  In

9  determining what is a sufficient but not greater than

10  necessary sentence, I consider not only the advisory

11  sentencing guidelines but also the sentence provided for by

12  the statutes and the sentencing factors set forth in 18

13  United States Code Section 3553(a).

14       And based on those, I find a custodial sentence of

15  21 months to be followed by a three-year term of supervised

16  release with conditions does constitute a sufficient but not

17  greater than necessary sentence.

18       That is about mid-guideline range, Mr. Stennerson,

19  and this would be your fifth felony; however, you are not

20  yet sentenced on the four felonies that are still pending in

21  state court.  But it's rather atypical that you would,

22  apparently, lead a law-abiding life up to the point of age

23  of 33, and that then from October of 2018 through March of

24  2022 you would accumulate these pending charges in state

25  court.

14

1          This is -- these are serious offenses.  You are an

2     individual who is prohibited from possessing a firearm,

3     first of all.  You are prohibited from possessing a firearm

4     because you are an unlawful user of controlled substances.

5          And then you were in possession of this firearm

6     while these state cases were pending, and you had agreed,

7     pursuant to your release in those cases, that you

8     acknowledge that you could not legally possess a firearm.

9          And possession of a firearm coupled with somebody

10    who is struggling so significantly with substance abuse

11    issues, using methamphetamine and marijuana, et cetera,

12    presents a danger to the community, Mr. Stennerson.

13         Obviously, when you are under the influence you are

14    not making good decisions, and if you have easy access to a

15    firearm, that could lead to some very dangerous and perhaps

16    even deadly circumstances.

17         You really have had no full-time employment in the

18    last ten years, and I agree with Ms. Gosch, employment

19    certainly does provide stability for someone and grounds

20    them and gives them some sense of self-esteem and

21    self-worth, and I think some vocational training to help you

22    to find something to do to support yourself that is

23    meaningful for you would go far ways into making you a

24    productive person and, hopefully, a law-abiding person.

25         And some substance abuse treatment that could get

15

1  to the heart of why you're committing crimes, which is your

2  addiction to substances, would also go a long ways to

3  protecting the community and resulting in you being a

4  law-abiding member of that community.

5       I think between this sentence and I don't yet know

6  what sentence you are going to get in state court, but I

7  anticipate that you will either get some prison or DOC time,

8  and state court -- the state system I should say, also has

9  some good drug programs such as NEXUS, because you likely

10 won't have enough time to do the RDAP program that the

11 Bureau of Prisons would offer, but the NEXUS program is a

12 good program, and it's about a nine-month program as I

13 recall.

14      And so participating in the programming that the

15 state system will have to offer, then I'm sure you'll be on

16 state supervision, while you will be on federal supervision,

17 and so once you're back in the community you will be

18 monitored, but you'll also have supervising officers who can

19 offer you some programming and so forth to help you maintain

20 your sobriety and be law abiding.

21      So I think this sentence does accomplish the

22 purposes of sentencing in that it takes into consideration

23 the nature and circumstances of the offenses and your

24 history and characteristics and reflects the seriousness of

25 the offenses, promotes a respect for the law, and provides

16

1    just punishment.

2         And between this sentence and what you receive in

3    state court, I would hope that you would take that time to

4    make a decision about taking a different path,

5    Mr. Stennerson, and that you could -- that this would in

6    fact deter future criminal conduct, which will then protect

7    the public.

8         So it is the judgment of the Court that you be

9    committed to the custody of the Bureau of Prisons for a term

10   of 21 months on each count to run concurrent, and concurrent

11   with the pending state cases that are reflected in

12   paragraphs 30, 31, 32, and 33 of the presentence report.

13        And I will recommend that the Bureau of Prisons

14   place you at the Yankton, South Dakota, facility for

15   proximity to family.  And I'll recommend the RDAP program,

16   even though I think that you probably will not have an

17   opportunity to participate in that; but in the off chance

18   that you do, it would be a good program for you.

19        And then upon your release from imprisonment, you

20   shall be placed on supervised release for a term of three

21   years on each count to run concurrent and concurrent with

22   your state cases.

23        Within 72 hours of your release from the custody of

24   the Bureau of Prisons, you shall report in person to the

25   probation office in the district to which you are released.

17

1    While on supervised release, you shall not commit any

2    federal, state, or local crimes and shall not possess a

3    controlled substance.

4          You are prohibited from owning, using, or being in

5    constructive possession of firearms, ammunition, or other

6    destructive devices while on supervision and anytime after

7    the completion of the period of supervision unless granted

8    relief by the Secretary of the Treasury.  You shall

9    cooperate in the collection of DNA as directed by your

10   probation officer.

11         Further, you shall comply with the standard

12   conditions of supervision as recommended by the United

13   States Sentencing Commission and which have been approved by

14   this Court.  You shall also comply with the following

15   special conditions:

16         You must participate in an outpatient program for

17   mental health treatment as approved by your probation

18   officer.  You must remain in the program until you are

19   released by your probation officer in consultation with your

20   treatment provider.

21         You must pay all or part of the costs of treatment

22   as directed by your probation officer.  You must submit your

23   person, residence, place of employment, vehicles, and papers

24   to a search, with or without a warrant, by any probation

25   officer based on reasonable suspicion of contraband or

18

1   evidence in violation of a condition of release.

2           Failure to submit to search may be grounds for

3   revocation.  You must warn any other occupants that the

4   premises may be subject to searches pursuant to this

5   condition.  You must allow seizure of suspected contraband

6   for further examination.

7           You must abstain from the consumption of alcohol

8   and are prohibited from entering establishments where

9   alcohol is the primary item of sale.  You must participate

10  in substance abuse testing to include not more than 365

11  urinalysis tests, not more than 365 Breathalyzer® tests, and

12  not more than 36 sweat patch applications annually during

13  the period of supervision.

14          You must pay all or part of the costs of testing as

15  directed by your probation officer.  You must participate in

16  and successfully complete an outpatient program of substance

17  abuse treatment as approved by your probation officer.

18          You must remain in the program until you are

19  released by your probation officer in consultation with your

20  treatment provider.  You must pay all or part of the costs

21  of this treatment as directed by your probation officer.

22          You must not purchase, possess, use, distribute, or

23  administer marijuana, including marijuana that is used for

24  recreational or medicinal purposes under state law.  You

25  must not possess, ingest, or inhale any psychoactive

19

```
 1    substances that are not manufactured for human consumption

 2    for the purpose of altering your mental or physical state.

 3          "Psychoactive substances" include but are not

 4    limited to, synthetic marijuana, kratom and/or synthetic

 5    stimulants such as bath salts and spice.  You must comply

 6    with all child support obligations and pay child support as

 7    ordered.

 8          I find that you don't have the ability to pay a

 9    fine and I hereby waive the fine, but you are ordered to pay

10    to the United States a special assessment of $100 on each

11    count for a total of $200, which shall be due immediately.

12          During the period of your incarceration you are

13    ordered to pay criminal monetary penalty payments at the

14    rate of not less than $25 per quarter.  Those payments shall

15    be made to the Bureau of Prisons Inmate Financial

16    Responsibility Program and paid to the clerk of this court.

17          And you understand, Mr. Stennerson, that pursuant

18    to the plea agreement that you have waived your right to

19    appeal this sentence?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  You do reserve your right to appeal my

22    denial of your motion to dismiss, however.

23          Any legal objection to the sentencing, Mr. Rubich?

24          MR. RUBICH:  No objection, Your Honor.

25          THE COURT:  Any legal objection, Ms. Gosch?
```

20

1        MS. GOSCH:  No, Your Honor.

2        THE COURT:  Mr. Stennerson, you are remanded to the

3   custody of the United States Marshals to carry out the

4   judgment of the Court, and we are adjourned.

5        (Whereupon, court adjourned at 1:56 p.m.)

6                    --o0o--

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21

**CERTIFICATE OF REPORTER**

1

2      I, Kim Marchwick, a Registered Professional

3 Reporter and Certified Realtime Reporter, do hereby certify

4 that the foregoing 20 pages of transcript is a true and

5 correct record of the proceedings given at the time and

6 place hereinbefore mentioned; that the proceedings were

7 reported by me in machine shorthand and thereafter reduced

8 to typewritten form using Computer-Aided Transcription; that

9 after being reduced to typewritten form, a certified copy of

10 this transcript will be filed electronically with the court.

11      I further certify that I am not an attorney for nor

12 employed by, nor related to any of the parties or attorneys

13 to this action, nor financially interested in this action.

14      Whereupon, this document was signed by me in

15 Billings, Montana, this Wednesday, the 27th day of December,

16 2023.

17

18

19                    */s/ Kim Marchwick*

20                    _____
                     Kim Marchwick
                     Registered Professional Reporter
21                   Federal Certified Realtime Reporter
                     Certified Realtime Reporter
22                   2601 2nd Avenue North
                     Billings, Montana 59101
23                   (406) 671-2307
                     marchwickkim@gmail.com
24

25